C. H. APPEL, Appellee, v. R. J. CARR, Appellant.

No. 41555.

FEBRUARY 7, 1933.

REHEARING DENIED MAY 6, 1933.

Wisdom & Kirketeg, for appellant.

Marshall F. Camp, for appellee.

EVANS, J.—The record is voluminous and complicated. The argument for the appellant is predicated largely upon the theory that the entire contract between the parties was entered into by *telegrams* and not otherwise. On the other hand, it is the contention of the plaintiff that the contract between the parties was evidenced in writing consisting both of telegrams *and of letters*. Virtually every telegram was qualified by reference to a letter to follow. The two transactions between the parties began on August 2, 1926, with a telegram known as Exhibit A in the record. This was followed by a succession of telegrams and letters indicated alphabetically in the record from Exhibit A to Exhibit O, inclusive. We set these forth chronologically, as follows:

"Exhibit A.    Telegram.

"To R. J. Carr, Blockton, Iowa, August 2, 1926 `117139 C. B. & Q.

"Offer five seventy hundred pounds Blockton subject our further confirmation

"Paid Chg. 1:00 P. M.    C. H. Appel Com. Co

"Exhibit B.

"R. J. Carr, Blockton, Iowa ·August 2, 1926

"Dear Sir:  In reply to your telegram this morning asking us to submit best offer on car country run Timothy Seed 10 days shipment, f. o. b. Blockton we replied offering 5.70 per 100 lbs. f. o. b. Blockton, subject our further confirmation, but at this writing have received no reply from you, so presume that you were not interested in selling basis this price.

"The above bid is for new crop sound average quality country run Timothy Seed dockage over 2% allowed and for 10 days shipment.

"We would like very much to do some business with you and if our offer is just a trifle out of line with your views, kindly wire us lowest price at which you can sell, and will do our best to confirm, also state approximate quantity you can sell.

"Should you decide to ship any Seed to St. Louis on consignment, would like to handle the business for you.

"We are also having a fairly good demand for Clover Mixed

Hay at the present time, and if you are shipping any of this to St. Louis kindly remember us.

"With best wishes, and awaiting your further favors,

"Yours truly,

"CHA:GJ                                    C. H. Appel Com. Company.

"Exhibit C.   Telegram.

"CHB703 18 Collect                    1926 Aug. 2 PM 10 25
"Appel Com. Co., St. Louis, Mo.

"Accept offer of five seventy for one car of country run seed f. o. b. Blockton shipment ten days.

                                        "R. J. Carr

"Exhibit D.   Telegram.

"To: R. J. Carr, Blockton, Iowa, Aug. 3, 1926

"Telegram received confirm purchase car timothy see letter for instructions.

"Paid Chg 10:00 a. m.                    C. H. Appel Com. Co.

"Exhibit E.

"R. J. Carr, Blockton, Iowa, August 3, 1926

"Dear Sir: Per telegrams exchanged we confirm purchase from you of one car sound average quality country run Timothy Seed to contain between 35,000 lbs and 40,000 lbs, to be at least 55% bright Seed and free of buckhorn, dockage over 2% allowed at 5.70 per 100 lbs f. o. b. Blockton, seamless bags extra at value, 10 days shipment.

"Kindly arrange to ship this car to us at St. Louis, Mo., as soon as possible, we would like to have car shipped this week if you can conveniently do so.

"Make draft on us at St. Louis, Mo., for 90% of value, routing your draft through the First National Bank here and mark B–L 'Inspection allowed.'

"We are pleased to have traded with you and just as soon as you have more Seed to offer, kindly let us hear from you by wire as we may be able to place another car at this price.

"Also send us a sample of this car as soon as it is shipped.

"We now await your confirmation of this sale to us, also advice of shipment of car.

"Yours truly,

"CHA:GJ                                    C. H. Appel Com. Company.

"Exhibit F.

"C. H. Appel Co., St. Louis, Mo.                    Aug 4, 1926

"Kind Sir: Your letter at hand. This is the confirmation of sale of one car around 40,000 to 45,000 lbs at 5.70 Blockton. Bags at market value 10 ds shipment. I think we will be able to get car out the last of week dockage 2% the seed is running nice. I wired you offer 2nd car at same price and could ship from Redding on Burlington. Hoping this is all satisfactory will wait your reply.

"R. J. Carr

"P. S.—Just wired for price on another car. Hoping we can do some more business.

"Exhibit G.

"R. J. Carr Grain Co., Blockton, Iowa, August 6, 1926

"Gentlemen: Your letter of August 4th confirming sale to us of car Timothy at 5.70 per 100 lbs f. o. b. Blockton received this morning.

"Confirmation is in order except that your confirmation reads 40,000 lbs to 45,000 lbs and quantity should be 35,000 to 40,000 lbs per our letter of August 3rd.

"We trust that you will be able to get this car shipped tomorrow, billing it per instructions in our letter of August 3rd, and sending us sample of the Seed.

"Yours truly,

"Exhibit H.    Telegram.

"CHB617 10 Collect                    1926 Aug 4 PM 6 03
    "Des Moines, Iowa,          4
"C. H. Appel Comm Co., St. Louis, Mo.

"Submit offer car seed thousand bushel twelve days shipment.
"R. J. Carr Grain Co.

"Exhibit I.    Telegram.

"R. J. Carr Grain Co., Blockton, Iowa,          August 5, 1926

"Five forty FOB Blockton same basis other car subject our further confirmation.
"Paid Chg. 10:15 A. M.                    C. H. Appel Com Co.

"Exhibit J.  Telegram.

"Blockton, Iowa,              5                    1926 Aug 5 PM 4
"C. H. Appel Com. Co., St. Louis, Mo.

"Accept offer five forty Blockton one thousand bushels twelve days shipment.

                                              "R. J. Carr

"Exhibit K.

"R. J. Carr, Blockton, Ia.              ,                  August 5, 1926

"Dear Sir: Per telegrams exchanged we confirm purchase from you of one car new crop average country run Timothy Seed to contain not over 1,000 bu. dockage over 2% allowed. Seed to be at least 75% bright Seed, to be free of Buckhorn at 5.40 per 100 lbs f. o. b. Blockton 12 days shipment.

"We trust that you will ship some nice quality Seed in this car, as party to whom this Seed is sold is very particular and we desire to give him nice quality.

"If you can advise us several days in advance when you will ship this car, will appreciate same as our customer may want it shipped to some other point.

"When you have further lots of Timothy to offer will be pleased to hear from you again.

"Yours truly,.

"CHA:GJ                    C. H. Appel Com. Company.

"Exhibit L.  Telegram.

                                        "August 20–1926

"To: R. J. Carr Grain Co. Blockton, Iowa

"Car twenty eight one five eight arrived sample shows buckhorn we purchased seed free of buckhorn cannot accept on contract advise.
"Paid charge 4:50 PM          '            C. H. Appel Com. Co.

"Exhibit M.

"Blockton                                          No. 13
"C. H. Appel. Comm. Co.                        August 21–1926

"Kind Sir: Yours at hand sorry this seed did not meet with your approval. It is same quality that have been in other cars. I was going by our sale telegrams and your confirmation by telegram and buckhorn was not mentioned in either. I was just selling country run seed and would not sell seed any other way. And as I said I had some seed that was hulled bad and I hauled it from Redding

to Blockton just because I wanted to give you as good a car as I could get but there is no use of arguing the question now, the car is there. And no use of making any unnecessary expense to you or my- self. We might both been to blame so I think we had better get to- gether on this car. I want to do what is right on this. I believe you will. So handle this car and I will meet you half way on same. I think too much of my word to quibble over one car of seed and as you said it takes some time to build up a reputation and a man can lose it in one deal, so I hope we can get this cleared up so we can feel as free to do business with each other as we did before.

"Yours truly,

"R. J. Carr

"Exhibit N.   Telegram.

"A45 7 Collect                              1926 Aug 23 AM 9 42
    "Blockton, Iowa,  23
"C. H. Appel Com. Co., St. Louis, Mo.
    "Unload car Timothy letter for instructions

"R. J. Carr

"Exhibit O.

"R. J. Carr, Blockton, Ia.                          August 23, 1926
    "Dear Sir:  This morning we received your telegram to unload car Timothy and see letter for instructions.

    "We have accordingly paid your draft of 2,150.00 on car No. 28158-CGW containing 45,000 lbs of Timothy Seed, and have ordered car to Warehouse for unloading.

    "We now await your letter of instructions.

    "Yours truly,
"CHA:GJ                                   C. H. Appel Com. Co."

■■  Our first consideration is to determine whether the contract is to be ascertained from a consideration of the telegrams alone, as contended by the appellant, or whether the letters also must be con- sidered as a part of the correspondence. We deem it very clear that the letters must be deemed as a part of the written evidence of the contract between the parties. The telegrams were necessarily brief and incomplete in their verbiage. The very purpose of the letters was to clarify and amplify. Every telegram reserved the right to thus clarify by letter. Note for instance Exhibits A, C, D, H, I, and J. Not one of them indicates their subject-matter as "timothy" seed.

Some of them refer to "seed"; some of them even omit that term. The subject-matter is made clear in the letters that follow in each case.

The argument for the appellant is that the letters were a mere trick intended to make additions to a contract already made by wire. This position is not tenable. There was nothing tricky about the letters. Each followed the wire promptly. The wire advised the sendee of its coming. The letter was received in each case before the shipment. The letter served to advise each party fully of the understanding of the other party as to what the contract was. Such is the function of every writing that purports to evidence a contract.

Following the receipt by the defendant of the letter, Exhibit O, from the plaintiff, the plaintiff took delivery of the car and unloaded the same at the warehouse. In order to obtain such delivery, however, he had to pay the sight draft for $2,150.

█ I. We turn to the errors assigned as grounds of reversal. The evidence in the case discloses two transactions between the parties, each of which involved the purchase of a car of timothy seed. The record presented no controversy over the purchase and sale of the first car. Exhibits A to G, inclusive, have relation to the first transaction. The transaction as to the second car is evidenced by Exhibits H, I, J, and K. It will be noted that Exhibit I, which is the offer on the second car, contains the phrase "same basis other car" subject to confirmation. Exhibit K, the confirmation letter, called for seed "75% bright", whereas the confirmation letter for the first car called for seed "55% bright". The correspondence leading up to the purchase of the first car was pleaded and put in evidence solely for the purpose of interpretation of Exhibit I. Such correspondence pertaining to the first car had no other function in the case at bar. The plaintiff was permitted to prove over the objections of the defendant that he had been dissatisfied with the quality of the seed sent in the first car and that he had been compelled to stand a loss thereon. He was further permitted over appropriate objection, to read into the record Exhibit 15, which was a letter under date of August 19, written by the plaintiff himself to the defendant, and was as follows:

"R. J. Carr Grain Company, Blockton, Iowa.

"Dated August 19, 1926.

"Dear Sir: Your letter of August 17th regarding car Timothy 117139 Q received this morning and contents fully noted.

"Had this seed been free of buckhorn, we would have experienced no trouble in applying it on the contract, but this weed is noxious and very objectionable in this market and for this reason seed is purchased accordingly.

"We took this matter before the Seed Committee of the Saint Louis Merchants Exchange today and they decided to allow purchaser 25¢ per 100 lbs., discount on account of the buckhorn which showed in official sample. We considered this a very fair allowance and wired you that we could apply this car on contract at 25¢ per 100 lbs. discount, but at this writing have received no reply from you, although hope to hear from you later in the day or tomorrow morning.

"The writer has always been fair and square in all of his dealings and has built up a reputation for such with firms doing business with us and we want to continue traveling in that direction.

"We purchased this car of seed from you to be free of buckhorn and were very disappointed when sample of car showed this weed and feel that you did not ship seed per our contract.

"This car is now on demurrage and we trust that we will hear from you with a favorable reply by wire tomorrow morning so that we can order car to warehouse for unloading.

"Basis today's market, we would hardly be interested in paying over 2.00 per bushel, F.O.B. your shipping point for sound quality, country run Timothy, dockage over 2% allowed and to be free of buckhorn shipment by September 5th.

"Yours truly,

"C. H. Appel Com. Co."

The subject of the foregoing was the first car. We think the admission of this letter was prejudicial error.

II. The plaintiff, as a witness, had testified on cross-examination that he refused to take the second car because the man to whom he had sold it refused to take it. He was examined by his own counsel as follows: "Why did the buyer you had for the second car of timothy seed refuse to take it on his contract with you?" Over appropriate objection the witness answered: "It was not up to the grade purchased." Motion to strike the answer was overruled. Plaintiff's counsel proceeded: "Was the contract you had with the pur-

chaser similar to the contract you had with Mr. Carr?" Appropriate objection to this question was overruled. The answer to this latter question does not appear in the abstract. Other similar testimony appears in the record. This includes a statement by the plaintiff that he had taken a loss of $.25 a hundred on the *first* car because it was not up to grade.

The overruling of the defendant's objections to the line of evidence here above indicated, inclusive of the letter, was prejudicial error.

III. The court gave instruction No. 9, as follows:

"If you find against the plaintiff and find that the seed shipped and delivered in the second car purchased on August 5th, 1926, was of the kind and character purchased by plaintiff then plaintiff is not entitled to recover any sum from the defendant, but defendant is entitled to recover on his counter claim against plaintiff and you should award him a total sum of $486.32 and interest on said sum at 6% per annum from the 15th day of August, 1926, to this date."

Instruction No. 10 contained the following:

"If you find that defendant did after the dispute arose as to the quality of the seed in the second car authorize the plaintiff to hold said car on consignment then such act on the part of the defendant would be a waiver of the terms and conditions of any prior contract between the plaintiff and defendant regarding said second car of seed, and the rights of the plaintiff and the defendant are to be determined by you as though said car had originally been shipped as seed sent on consignment only."

These two instructions are not consistent, and one or the other of them is necessarily erroneous. Instruction No. 9 makes the quality of the seed the turning point of the case; whereas instruction No. 10 makes the question of waiver or rescission as the turning point of the case. Upon the record, as a whole, we think that instruction 10 is erroneous. If it were found true that the plaintiff was not justified in rejecting the car of seed on the ground that the quality thereof was not as good as specified in the contract, then the rejection of the car by the plaintiff would be a breach of the contract, and would give rise to a cause of action against him in one form or another and in favor of the defendant. The plaintiff unqualifiedly rejected the car at its destination. The defendant could have refused to reassume

dominion of the property; that is to say, he could have stood upon his contract and have sued the plaintiff for his contract price. That would have been a hazardous course for both parties. The property was bulky and valuable. It was in the hands of the carrier, and was subject to demurrage and other daily accruing expenses. If each party were to abandon the property to the carrier, it would necessarily result in great loss to one or the other. The fact, therefore, that the defendant undertook to make the most of the salvage furnishes in itself no ground to the plaintiff to say that the defendant thereby waived *the breach of contract.* The defendant had an election of remedies. The election of one necessarily waived the other. Such waiver did not relieve the plaintiff of responsibility for the breach of contract, if there was such breach. Instruction No. 10 treats such waiver as a rescission of the contract. No rescission was pleaded in terms. The substance of the plaintiff's pleading was that he was justified in rejecting the seed for lack of quality and that the defendant in effect admitted the justification or acquiesced therein; so that under plaintiff's own pleading the question of justification or quality of the seed was made the turning point of the case. The fact that the defendant resumed the dominion of the property because of the plaintiff's rejection thereof did not of itself amount to a waiver of the plaintiff's breach of contract. Such action was consistent with an election by the defendant to sue for damages for breach of contract. The defendant in his counterclaim did purport to sue for damages for breach of contract. The alleged measure of his damages was indefinite and not well-pleaded. But the pleading was not assailed, and the cause was tried and submitted on the theory here indicated. The record before us is complicated and unsatisfactory and somewhat befogged, and the trial court undoubtedly found it so. It must be said, however, that, in so far as instruction No. 10 purports to predicate a rescission of the contract, or a waiver of the breach of it, on the mere fact that the defendant resumed dominion of the car after its rejection by the plaintiff, it was erroneous.

For the errors herein indicated, the judgment must be reversed, and a new trial awarded. It is so ordered.

Reversed.

Kindig, C. J., and Albert, Stevens, Donegan, Kintzinger, and Utterback, JJ., concur.