,SMITH v. HAMM.

4-7401                                    181 S. W. 2d 475

Opinion delivered June 26, 1944.

508

*Hugh M. Bland,* for appellant.

*Roy Gean,* for appellee.

Knox, J. Ill feeling has developed between appellants and appellees, who reside next door to each other. At different times various members of the appellee clan have addressed opprobrious language to various members of the appellant family. While the scene of these exchanges is not definitely alleged, it may be inferred that appellees gave vent to their feeling from the vantage point of their own premises, while the persons addressed were on property which was appellants' home. The question presented by this appeal is whether equity should restrain appellees from further molesting appellants. The matter was disposed of in the trial court on demurrer. The complaint to which a demurrer was sustained reads in part as follows: "1. The plaintiffs, C. P. Smith and Louise Smith, are the owners of property at 1620 South S street in the city of Fort Smith, Arkansas, and have lived and resided in said property for a period of ten years. The plaintiffs, Juanita Smith and Doris Smith, are their children and live and reside with them.

"The defendants occupy the property at 1622 South S street in the city of Fort Smith, Arkansas, said prop-

erty being directly east of the property of these plaintiffs; that said property is separated by a picket fence four feet high which is built on or near the property line.

"From on or about the 8th day of April, 1943, the defendants and each of them, acting in concert and conspiring together have annoyed, molested, threatened, defamed, ridiculed and abused the plaintiffs and each of them in that they have unjustly and falsely accused their daughter, *Velma Reed,* in their presence and in the presence of neighbors of misconduct and applied to her vile, opprobrious and scurrilous epithets; that the defendant, Etta Studdard, since said date, and on numerous occasions cursed and abused the plaintiff, Louise Smith, and the defendant, Lula Hamm, was present at the time, acquiescing in and urging her to do the plaintiff, Louise Smith, bodily harm.

"On the 7th day of December, 1943, the defendant, Etta Studdard, drew a .22 caliber rifle on the plaintiff, Louise Smith, and threatened to take her life and ordered her not to return to her back yard and that the defendants, Kirby S. Hamm, Lula Hamm and Etta Studdard, have continuously urged the defendants, Kirby Hamm, Jr., and Paul Hamm, to beat up and do bodily harm to Doris Smith, a girl of fifteen years of age; that all of the defendants have continuously and at various times cursed, ridiculed and abused the plaintiffs and applied to them profane names in the presence of their friends and neighbors, to their disgrace and humiliation.

"All of the overt acts on the part of the defendants above mentioned have been committed by, or acquiesced in, by all of the defendants acting together in conspiracy to molest, ridicule and defame the plaintiffs in the quiet and peaceable possession of their home.

"3. The plaintiffs further state that they have not connived at or given the defendants any just or legal excuse or cause for their conduct, but have at all times remained upon their property and are without fault in the premises.

"4. Plaintiffs further state that they attempted all lawful methods to keep the defendants from further molesting and annoying them in that they have reported their actions to the office of the prosecuting attorney, but they have at all times failed to get any relief through these efforts and that they have no adequate remedy at law and therefore bring these proceedings in equity and that, unless the defendants, and each of them, are enjoined and restrained from further molesting, annoying, defaming, ridiculing, threatening, cursing and abusing the plaintiffs and coming upon their property, the plaintiffs will suffer irreparable injury and damage.

"5. The plaintiffs further state that the defendants and each of them are threatening to continue the annoyance, molestation and threats to do bodily harm to the defendants and that the court should issue herein a temporary restraining order forthwith and without notice. In support of said temporary restraining order, they attach hereto the affidavits of Maggie Schuler and Hallie Cross and make them a part of this complaint.

"Wherefore, the plaintiffs pray that the court issue forthwith and without notice a temporary restraining order, restraining the defendants and each of them, from further molesting, annoying, threatening, ridiculing and defaming, or in any way interfering with the plaintiffs in the peaceable and quiet possession of their home and that, upon hearing had, the court permanently enjoin and restrain the defendants, and each of them, from the acts set out in the restraining order, for their costs and for all proper and equitable relief.''

Appellants contend that the conduct of appellees constitutes a nuisance, which injures their property and that equity therefore has jurisdiction. The use of opprobrious language has under certain conditions been considered a nuisance. 39 Am. Jur. 366, Anno. 48 A. L. R. 89; *Mackenzie* v. *Frank M. Pauli Co.*, 207 Mich. 456, 174 N. W. 161, 6 A. L. R. 1305; *Bernard* v. *Finkbeiner,* 147 N. Y. Sup. 314, 162 App. Div. 319.

The fact that appellees' conduct was of a character to constitute a nuisance is not within itself sufficient to

authorize the use of the extraordinary process of injunction for the abatement thereof.

In the case of *State* v. *Vaughan,* 81 Ark. 117, 98 S. W. 685, 7 L. R. A., N. S. 899, this court had occasion to consider the proper use of injunctions to restrain nuisances, Chief Justice HILL, quoting with approval from In re *Debs,* 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092, declared that before a court of equity could enjoin a nuisance either public or private ''There must be some interferences actual or threatened with property or rights of a pecuniary nature.'' In the case of *Lyric Theater* v. *State,* 98 Ark. 437, 136 S. W. 174, 33 L. R. A., N. S., 325, Mr. Justice FRAUENTHAL, speaking for the court, said that the jurisdiction of courts of equity to enjoin nuisances ''is interposed solely for the protection of property and civil rights . . . In the absence of an injury to property or to civil rights the chancery court has no jurisdiction'' in such cases.

Quite frequently in earlier cases, as in this case at bar, the acts complained of were violative of criminal statutes, which subjected the perpetrator thereof to criminal prosecution. This conflict of jurisdiction has given the courts a great deal of difficulty. The rule finally arrived at with respect to the matter is succinctly stated in 28 Am. Jur. 339, Injunctions, § 150, as follows: ''It is in the prevention of invasion of, injury to, or destruction of property or property rights that the remedy by injunctions is generally granted, and it is no obstacle to injunctive relief in such cases that the acts complained of may be of a criminal character. However settled may be the proposition that equity will not intervene by injunction to restrain acts that are merely criminal, this does not preclude injunctive relief against the commission of criminal acts which cause irreparable injury to the complainant's property or pecuniary rights, even though the acts complained of are committed by public officers. In order, however, to obtain relief by injunction against the commission of acts of a criminal character, on the ground of injury to the property rights of an individual, the court will require that the complainant clearly show

such facts and circumstances in the particular case as will justify the court in granting the relief desired.

"There is a manifest distinction between enjoining an individual from committing a crime and enjoining the owner of property, or its possessor, from allowing his property to injure others. Although equity will not restrain acts of a criminal character, it will restrain the unlawful use of property, even though such use is an offense against the laws of the state or the ordinances of the community. The court, in such cases, does not interfere with the enforcement of the criminal laws, nor does it interfere to prevent the commission of crime, although that may incidentally result, but it exerts its force to prevent individual property from being destroyed, and ignores entirely the criminal features of the act. In affording relief in such cases, it may incidently enjoin the commission of a crime. The remedy given is purely preventive; the defendant is not punished for what he has done. In granting this relief, the constitutional right of trial by jury is not infringed, on the theory that disobedience of the injunction will constitute contempt which may be punished summarily. Even though courts will enjoin criminal acts which violate some personal or property right, they will not assume jurisdiction where the results of the injunction on the plaintiff's property rights are not determinative, but inferential only."

The determinative test of the right of courts to interfere in cases like the one at bar is whether the acts complained of work an irreparable pecuniary injury to property or pecuniary rights of the complaining party.

The complaint here fails to directly allege any such injury or damage, and such cannot reasonably be inferred from the facts which are alleged. True it is that the allegations disclose that appellants are being annoyed, and are being disturbed in their home. This annoyance, however, is directed against them personally and is not directed against their property. Doubtless appellants would be subjected to the same opprobrium wherever they might come in contact with appellees, and likewise

when appellants are absent from their home appellees doubtless refrain from such conduct in the vicinity thereof. The sale value of the property is in no way affected, because there is no reason to assume that a purchaser would be subjected to the same annoyance.

Cases where injunctions have been issued to prevent odors and noises from interfering with the use of private property have little or no application. In those cases such odors and noises resulted from a use to which the adjoining property had been put, and it was manifest that they would be continued regardless of who occupied the neighboring property. So there was proof of a continuing injury to the neighboring property itself.

We have been cited to only two cases where courts of equity have enjoined as a nuisance the use of opprobrious language, and our investigation has revealed no other. These cases are *Bernard* v. *Finkbeiner,* 147 N. Y. Sup. 514, 162 App. Div. 319, and *MacKenzie* v. *Frank M. Pauli Co.,* 207 Mich. 456, 174 N. W. 161, 6 A. L. R. 1305. In the first of these cases it was held that an injunction was proper to prevent the occupants of property adjacent to a theater from continuing to engage in outbursts of loud, profane and obscene language, which could easily be overheard by persons attending the theater. In the second case it was held the congregating of employees of a factory in an adjoining alley and the use of loud, profane and indecent language by them to the annoyance of occupants of neighboring property was a nuisance which should be enjoined.

The two cases last mentioned, as well as the case at bar, are border line cases. In neither the New York nor the Michigan case, however, was there any suggestion that opprobrious acts followed the persons of the occupants of the property rather than being associated with the property itself. The loud, profane and obscene conversations would continue regardless of who owned or occupied the theater, or the property adjacent to the factory. Therefore, direct pecuniary injury was being inflicted on the adjacent property in these two cases, since its market value was thereby being reduced.

The allegations concerning acts past and threatened upon which the prayer for injunction is founded are set out in par. 2 of the complaint. The overt acts alleged are (1) that appellees have falsely accused Velma Reed, a daughter, of misconduct; (2) that on numerous occasions they have cursed and abused Louise Smith, and on one occasion threatened to shoot her, and (3) that the older members of the Hamm clan have from time to time urged the two younger members thereof to do bodily harm to Doris Smith, another daughter, and (4) from time to time each and all of the appellees have cursed and abused each and all of appellants. The daughter, Velma Reed, evidently does not reside on the property and is not a party to this litigation. All of the acts complained of appear to be more in the nature of personal trespasses than irreparable injury to property. *Davis, etc., Mfg. Co.* v. *Los Angeles*, 189 U. S. 207, 23 S. C. R. 498, 47 L. Ed. 778.

In the case of *Hill* v. *Carter*, 182 Ark. 1007, 33 S. W. 2d 371, the pastor of a colored church alleged that the defendants had physically restrained and prevented him from entering his church and conducting services, and sought an injunction against threatened recurrence of the act. A demurrer was sustained and we affirmed, saying: "The court correctly sustained the demurrer as the complaint failed to state a cause of action. Appellant alleges that he is the legal pastor of the Pine Bluff Colored Baptist church and he seeks to enjoin the appellees, who, so far as the complaint discloses, are not connected with said church either as officers or members, from interfering with him as pastor. He alleges that they had prevented him from holding services, which might amount to a misdemeanor, such as disturbing the peace, but chancery court will not ordinarily enjoin the commission of a crime. *Lyric Theatre* v. *State*, 98 Ark. 437, 136 S. W. 134, 33 L. R. A., N. S., 325."

A comprehensive annotation relating to equity jurisdiction to enjoin crimes and criminal prosecutions is found at 35 Am. St. Rep. 670, and we quote a brief paragraph therefrom as follows: "So far as a succinct and comprehensive rule can be gathered from the cases, which

are far from being harmonious, it may be stated thus: Equity will not interfere to prevent the commission of criminal acts, if the injury which will result to property therefrom is merely a consequence, however natural and inevitable, of such acts; but if the acts, although criminal in the sense that the state has imposed a penalty for their commission, are primarily and essentially an injury to property, preventive relief may be granted within the same limits and under the same conditions as where the element of criminality is entirely absent, that is, an injunction will not issue unless the damage threatened is irreparable and the evidence is clear and convincing.''

The fact that reports made to law enforcement officers of appellees' action have produced no relief does not confer jurisdiction on courts of equity. 28 Am. Jur. 337. Furthermore, appellants need not depend upon the prosecuting attorney to institute criminal prosecution, they may cause such proceedings to be commenced by filing an affidavit with a magistrate. Section 4163, Pope's Digest. Likewise, the provisions of § 4185 of Pope's Digest afford a remedy to one who has been threatened.

The demurrer was properly sustained, and the decree is affirmed.