WEBBER *v.* GRAY.

5-1380                                          307 S. W. 2d 80

Opinion delivered November 25, 1957.

*Robert W. Griffith,* for appellant.

*Gentry & Gentry,* for appellee.

MINOR W. MILLWEE, Associate Justice.   On April 20, 1949, appellee filed suit against appellant alleging that for more than a year she had committed certain acts designed to humiliate, embarrass, worry, disturb and injure him in his social and business relations. Among such alleged acts were: Writing, mailing and otherwise .delivering numerous threatening, slanderous and vituperative letters and notes to appellee; making similar oral statements to his employer; repeatedly accosting appellee on the streets, at his place of business, residence, and in church, making false and embarrassing statements; and the continuation of such acts after appellee, appellant's father and police officers had repeatedly requested that she desist.   Appellee further alleged he had no adequate remedy at law and prayed that appellant be enjoined from the continuation of such acts. A temporary restraining order was issued when the suit was filed.

At a hearing held February 23, 1950, on appellee's petition for a contempt citation against appellant the chancellor found she had persistently violated the restraining order for many months.   The court further found that, because of appellant's "excitable and irrational" condition, final action on the contempt charge should be postponed pending a mental examination by authorities at the State Hospital.   At similar hearings on April 12, 1950 and April 27, 1950, the court found that appellant had continued such violations but postponed final judgment upon her promise to desist, and pending her good behavior and further observation as to her mental condition.

At another hearing on the contempt citation on June 1, 1950, the court again found that appellant had failed to live up to her promises and had continued to

·commit the acts prohibited in the restraining order. Appellant was adjudged guilty of contempt and her punishment fixed at 30 days imprisonment in the county jail, said sentence to run from the date of a commitment to be issued by the clerk, "when directed by this Court."

On December 4, 1956, appellee filed a petition alleging further persistent violations of the original restraining order and requested a new citation requiring appellant to show cause why a commitment should not issue as provided in the order of June 1, 1950; and asked that she be further enjoined from the institution and prosecution of any "suit at law, or otherwise" against appellee. Appellant answered with a general denial and alleged that the order of June 1, 1950, was invalid.

After a hearing on December 18, 1956, the court entered an order finding that appellant had willfully and persistently refused to obey previous orders of the court and had continued, particularly within the last six months, to commit the acts enjoined as well as new acts of molestation against appellee, his wife, mother and employer. Appellant was again enjoined from commission of said acts and adjudged guilty of contempt with the punishment of six months in jail to be suspended upon condition that she post bond in the amount of $200.00 as security for her compliance with the court's order. This appeal followed the posting of a supersedeas by appellant in the sum of $200.00.

Only the parties testified at the last hearing. They became acquainted in 1945 while both were working for a printing and lithographing company in the City of Little Rock where appellee is still employed. Appellant is employed as office manager of a local lumber company. According to appellant they had many dates and engaged in innumerable sexual intimacies over an extended period while appellee testified they were together only a few times and engaged in sexual intercourse only once when she came to his apartment. Whatever their relationship, appellee decided to discontinue it while the appellant felt differently and began a course of con-

duct in which she sought to force her attentions upon him.

For several years appellant has written numerous letters and notes to appellee in an effort to force him to renew their association. These notes and letters, signed and unsigned, were delivered by mail and by the appellant leaving them in or upon appellee's automobile, his residence and place of business. Similar letters have been written by appellant to appellee's mother, wife, employer and the real estate company from which appellee purchased his home and, in which, appellant states that appellee is the father of her unborn child and is soon to be faced with a paternity suit. Appellee estimated that he had received at least 200 such communications within a year prior to the last hearing.

On September 26, 1948, appellant caused a picture of herself and the announcement of their approaching marriage to be published in a local newspaper. On May 13, 1952, she made written application for a marriage license in their names. Appellee says both the announcement and application were made without his knowledge or consent. Almost daily appellant accosts appellee on the streets in an attempt to engage him in conversation. Since appellee's marriage on June 30, 1956, appellant has followed appellee and his wife to town in her car nearly every work day and left a note or letter in or upon his car when he refused to talk to her. On numerous occasions she has parked her car within a few feet of appellee's home for long periods. The telephone at appellee's home rings frequently when the caller merely "hangs up" upon answer being made.

In her testimony appellant admitted doing most of the things charged by appellee, asserting it was all done because of her abiding love for him and his broken promise to marry her. She denied that the announcement and application for a marriage license were made without his consent or that she caused her name to be listed in the city directory as "Mrs. George W. Gray". There was no corroboration of her testimony that she had four miscarriages as the result of the relationship

between them, and she admitted that she had no letter or note written to her by appellee.

Appellant first contends the trial court had no jurisdiction to restrain her from committing any of the acts in question under our holding in *Smith* v. *Hamm*, 207 Ark. 507, 181 S. W. 2d 475. In that case the members of one family sought to restrain their next door neighbors from cursing, abusing, threatening to shoot and commit other acts of violence against them. In affirming the action of the chancellor in sustaining a demurrer to the complaint, we held that before a court of equity will enjoin either a public or private nuisance there must be some actual or threatened interference to property or rights of a pecuniary nature as distinguished from personal rights. In the opinion Judge Knox carefully pointed out that the acts there complained of constituted violations of the criminal statutes and the injured parties hence had an adequate remedy at law through the enforcement of such laws. The distinguishing feature between that case and this one is that the acts of the appellant here do not constitute crimes and appellee is without any remedy at law. Unless we are willing to recognize some relaxation of the doctrine that equity has no jurisdiction to protect personal rights where no property rights are involved, appellee and his family must continue to endure the continued harassment and molestations of the appellant *ad infinitum*, or so long as she chooses.

Many leading authorities have frequently commented upon the unreasonableness of so arbitrary a doctrine that a court of equity will protect one in his rights of contract and property, but deny protection in his far more sacred and vital rights of a personal nature; and there is a progressive tendency on the part of courts to remedy by injunction, injuries to personal rights. See Annotations in 14 A.L.R. 300 and 175 A.L.R. 441; 19 Am. Jur., Equity, Sec. 150; 28 Am. Jur., Injunctions, Sec. 71; Pound, ''Equitable Relief Against Defamation and Injuries to Personality''; 29 Harvard L. Rev. 640; Long, ''Equitable Jurisdiction to Protect Per-

sonal Rights,'' 33 Yale L. J. 115; Leflar, ''Equitable Prevention of Public Wrongs'', 14 Tex. L. Rev. 438; Walsh, ''Equitable Protection of Personal Rights'', 7 N. Y. U. L. Rev. 578; Restatement of Torts, Vol. 4, Sec. 937.'

In the earlier Annotation in 14 A.L.R. it is said: ''Although the courts have been reluctant to admit that equity had jurisdiction to enforce or protect merely personal rights, and have usually discovered at least a nominal property right on which to base the granting of equitable relief, there are a few cases in which the courts have had the courage openly to repudiate the doctrine that only property rights will be protected, and to assert the jurisdiction of a court of equity to protect personal rights also.''

In the later Annotation in 175 A.L.R. numerous cases are cited in support of the following statement at page 442: ''In many of the more modern cases, the courts have either squarely held or have recognized as a principle that equity jurisdiction exists and will be exercised in appropriate instances for the protection of personal rights, and that the power of an equity court is not limited to situations in which a property right is involved. In some of such cases, the courts have remarked that the 'old' rule that equity will protect only property rights has been greatly relaxed, that such 'rule' is known chiefly by its breach rather than by its observance, and that law in action is breaking away from the property limitation which still receives sanction in law in books. It has also been observed that in reading decisions holding or stating that equity will protect only property rights, one is struck by the absence of any convincing reasons for such a sweeping generalization, that on principle it is difficult to find any sound reason for the enunciation of a broad principle that equity will not protect personal rights, and that the issue should not in logic or justice turn upon the sole proposition that a personal rather than a property right is involved. So to reason, it has been declared, would be to place property rights in a more favorable position

than personal rights, a doctrine wholly at odds with the fundamental principles of democracy, and one which has been forcefully castigated as suitable only to a semi-savage society.''

There are several cases in which courts have exercised equity jurisdiction to restrain and enjoin repeated molestation, assaults, harassments and the like. Thus the Texas court concluded that equity would intervene to protect purely personal rights of a woman who for a period of several years was continually importuned, assaulted, harassed, threatened and molested by her former paramour in his efforts to force her to resume her illicit associations with him. *Hawks* v. *Yancey,* (Tex. Civ. App.), 265 S. W. 233. Injunctive relief has also been extended to prevent an intrusion of a third person into family affairs destructive of the consortium between the spouses. *Henley* v. *Rockett,* 243 Ala. 172, 8 So. 2d 852. Other cases recognizing the jurisdiction of equity to protect personal rights are: *Ex parte Warfield,* 40 Tex. Crim. Rep. 413, 50 S. W. 933, 76 Am. St. Rep. 724; *Stark* v. *Hamilton,* 149 Ga. 227, 99 S. E. 861, 5 A.L.R. 1041; *Vanderbilt* v. *Mitchell,* 72 N. J. Eq. 910, 67 A. 97, 14 L.R.A. (N.S.) 304; *Kenyon* v. *City of Chicopee,* 320 Mass. 528, 70 N. E. 2d 241; *Hunt* v. *Hudgins,* (Tex. Civ. App.), 168 S. W. 2d 703; *Foley* v. *Ham,* 102 Kan. 66, 169 P. 183, L.R.A. 1918 C 204.

We find no fault with the following rule adopted by the Massachusetts court in the *Kenyon* case, *supra:* ''We believe the true rule to be that equity will protect personal rights by injunction upon the same conditions upon which it will protect property rights by injunction. In general, these conditions are, that unless relief is granted a substantial right of the plaintiff will be impaired to a material degree; that the remedy at law is inadequate; and that injunctive relief can be applied with practical success and without imposing an impossible burden on the court or bringing its processes into disrepute.''

In our opinion appellee was entitled to a part of the relief granted by the trial court. He has no remedy

at law against the almost incessant harassment which the record discloses he has been subjected to over a period of years. The acts of the appellant are not criminal and might be classed as trivial if they had been merely sporadic or of short duration. But appellee has the right to pursue his lawful daily occupation and family activities unhampered by the protracted molestations of the appellant as disclosed by the extraordinary circumstances presented here. This does not mean that she may not pursue any legal remedy she may have for breach of promise, or any other legal wrong which he might have committed against her by reason of their association. In this respect, and one other, the order of the trial court was too broad. The court was without power to restrain appellant from seeking redress in a court of law by filing a suit for damages. Whether she has a valid action of this kind is for the proper court to determine. The order was also too broad in prohibiting appellant from driving in the neighborhood of appellee's home.

So much of the decree as enjoins appellant from driving in a normal manner near appellee's home or filing any action for damages against him is, therefore, reversed. In all other respects the decree is affirmed. The costs of this appeal will be shared equally by the parties.