180 N.J. Super. 423 (1980)
435 A.2d 139
CARL L. CALLIARI AND CAROLE L. CALLIARI, PLAINTIFFS,
v.
HARRY D. SUGAR, DEFENDANT.
Superior Court of New Jersey, Chancery Division Cumberland County.
Decided May 28, 1980.
*425 Mitchell S. Berman, for plaintiffs (Shapiro, Eisenstat, Capizola, O'Neill & Gabage, P.A., attorneys).
Franklin J. Riesenburger, for defendant (Greenblatt & Greenblatt, attorneys).
HAINES, J.S.C.
Defendant Harry D. Sugar and his wife Joan agreed to sell their home to friends, the Calliaris. Shortly after the agreement was signed the body of Joan Sugar was found buried in her back yard. Plaintiffs, claiming physical and emotional illness resulting from the discovery and from their belief that she was murdered by her husband, refuse to consummate their purchase. They assert a breach of the provision of their agreement which requires that "the premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted," and seek rescission; in addition, they claim compensatory and punitive damages for the intentional infliction of their mental and physical distress, and for intentional damage to the real property. Defendant moves to dismiss the damage claims, contending that they fail to state a claim upon which relief can be granted. The claims relating to emotional distress and those concerning real property must be treated separately.
Defendant acknowledges, for the purpose of argument, the right to recover for intentional infliction of emotional distress, *426 sometimes referred to as the tort of outrage. Restatement, Torts 2d, § 47 at 77 (1965). There is doubt as to whether this tort has been recognized in New Jersey, emotional distress generally being an element of damages recovered for some other underlying tort. Morris v. McNab, 25 N.J. 271 (1957); Hafner v. Hafner, 135 N.J. Super. 328, 332 (Law Div. 1975). The thrust of the defense argument is that damages for outrage may be recovered only when intentional misconduct is directed at, or occurs in the presence of, the complaining party; here, the alleged murder of Joan Sugar was an act directed at her alone and not committed in the Calliaris' presence.
Plaintiffs, in opposition to the motion, rely on a number of New Jersey cases to support their right of recovery. However, all of them involve actions directed at the complaining parties. Thus, in Muniz v. United Hospitals Med. Center, 153 N.J. Super. 79 (App.Div. 1977), defendant hospital clumsily and unsympathetically informed plaintiffs of the death of their newborn baby and then failed to locate the baby's body for a period of three weeks. The parents' suit for intentional infliction of emotional distress was held to state a cause of action. Berman v. Allen, 80 N.J. 421 (1979), involved a child born with Down's Syndrome. The parents, seeking damages for their mental anguish, sued the doctors involved for failing to inform them of an available test which would have forecast the child's condition and permitted a decision to have an abortion. The court held such damages to be recoverable. In Morris v. McNab, supra, the court sustained an award of compensatory and punitive damages against a defendant who fraudulently induced plaintiff to enter into a bigamous marriage. In Kuzma v. Millinery Workers Local 24, 27 N.J. Super. 579 (App.Div. 1953), defendant secured the plaintiff's dismissal from employment through coercion. A suit for damages was sustained. Other New Jersey cases to the same effect are: Spiegel v. Evergreen Cemetery Co., 117 N.J.L. 90 (Sup.Ct. 1936) (defendant's employees, contrary to their express agreement, buried the dead in the absence of relatives, resulting in the *427 necessity for two exhumations); Harris v. D.L. and W.R.R. Co., 77 N.J.L. 278 (Sup.Ct. 1909), aff'd 82 N.J.L. 456 (E. & A. 1912) (violent forfeiture of the plaintiff's commutation ticket); Gray v. Serruto Builders, Inc., 110 N.J. Super. 297 (Ch.Div. 1970) (discriminating against the black plaintiff in connection with housing application).
Lemaldi v. DeTomasco, 156 N.J. Super. 441 (Law Div. 1978), cited by plaintiffs, requires discussion. In that case plaintiff purchased a $12,000 "dream car" which was, in fact, a "lemon." He experienced a steady procession of breakdowns and malfunctions, resulting in expensive, poorly completed and grudgingly undertaken repairs. Some legitimate claims were not honored by the manufacturer. He sued for compensatory and punitive damages, claiming, among other things, mental distress, for which recovery was allowed. Relief was based upon the outrageous breaches of the manufacturer's warranty which resulted in his emotional anguish. Lemaldi, on the surface, supports the contentions of the within plaintiffs, who also claim an outrageous breach of contract and resulting emotional distress. In that case, however, defendants were responding to a demand of plaintiff, based upon a provision in his contract. The outrageous failures and refusals to perform were actions directed at him, breaching the obligation imposed by that contract. Lemaldi, therefore, is distinguishable from the present case. Here the alleged murder of Joan Sugar was a direct violation of the criminal law and of her personal rights; its claimed breach of the provision of the agreement of sale was incidental, indirect, not aimed at plaintiffs and not undertaken in connection with the performance or nonperformance of the agreement of sale.
Numerous cases in various jurisdictions are cited by defendant, as the first step in his argument for dismissal, which support recoveries for emotional distress resulting from outrageous conduct. All involve action directed at the plaintiffs: Knierim v. Izzo, 22 Ill.2d 73, 174 N.E.2d 157 (Sup.Ct. 1961) (threatening plaintiff that her husband would be killed and the fulfillment of that threat); Wilson v. Wilkins, 181 Ark. 137, 25 *428 S.W.2d 428 (Sup.Ct. 1930) (bringing a mob to plaintiff's home at night and threatening to lynch him unless he left town); Flamm v. VanNierop, 56 Misc.2d 1059, 291 N.Y.S.2d 189 (Sup.Ct. 1968) (harassment of the plaintiff in the street); Great A & P Tea Co. v. Roch, 160 Md. 189, 153 A. 22 (Sup.Ct. 1930) (wrapping a disgusting dead rat for the unsuspecting plaintiff in place of a loaf of bread); Argyll v. International Security Bureau, Inc., 16 App.Div.2d 921, 229 N.Y.S.2d 467 (App.Div. 1962) (eavesdropping on plaintiff); Webber v. Gray, 228 Ark. 289, 307 S.W.2d 80 (Sup.Ct. 1957) (persistent efforts by defendant, plaintiff's former mistress, to renew an affair).
Indirect victims of intentional misconduct have been permitted to recover only when the conduct occurred in their presence. For example, a quarrel in front of a pregnant woman supported her recovery in Rogers v. Williard, 144 Ark. 587, 223 S.W. 15 (Sup.Ct. 1920). Some cases have required not only the presence of plaintiff but also knowledge of that presence by defendant. Philips v. Dickerson, 85 Ill. 11 (Sup.Ct. 1877); Taylor v. Vallelunga, 171 Cal. App.2d 107, 339 P.2d 910 (D.Ct.App. 1959). When misconduct has occurred outside plaintiff's presence, recovery has been denied. Koontz v. Keller, 52 Ohio App. 265, 3 N.E.2d 694 (Ct.App. 1936) (discovery of the body of a murdered sister); Ellsworth v. Massacar, 215 Mich. 511, 184 N.W. 408 (Sup.Ct. 1921) (later discovery of an attack on plaintiff's husband); Knox v. Allen, 4 La. App. 223 (App.Ct. 1926) (later discovery of attack on a child). There are no New Jersey cases on the subject.
The limiting factors applied to suits by persons indirectly damaged by outrageous action are set forth in Restatement, Torts 2d, § 46 at 72 (1965). The claimants' presence and, when no bodily harm occurs, a close family relationship, must be shown before recovery is permitted:
§ 46. Outrageous Conduct Causing Severe Emotional Distress
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

*429 (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
(b) to any other person who is present at the time, if such distress results in bodily harm.
The Restatement, Comment (1), at 79, underlines the "practical necessity of drawing the line somewhere since the number of persons who may suffer emotional distress at the news of the assassination of a president is virtually unlimited ..."
The Restatement rule extends the right of recovery to those closely and acutely, though indirectly, affected by willful misconduct, but not to any others. It draws a reasonable line, appropriate for New Jersey cases, and is adopted here. In the present matter the Calliaris are not persons toward whom any outrageous actions of defendant were directed; they were not present at the time of the alleged murder and were not members of the Sugar family. Consequently, they may not recover for their emotional distress.
Plaintiffs' claims relating to the real property proceed on different theories. They contend that the murder of Joan Sugar and the burial of her body in the rear yard of the property they agreed to purchase breached the promise in their contract that the premises would "be conveyed in the same condition as the same now are, reasonable wear and tear excepted," entitling them to rescind. The argument is logical; plaintiffs should have the opportunity to prove that the condition of the premises has deteriorated. They also argue that they own the Sugar property, relying upon the doctrine of equitable conversion, and claim that it was damaged intentionally by defendant, entitling them to recover damages. Century Federal S. and L. Ass'n v. Van Glahn, 144 N.J. Super. 48 (Ch.Div. 1976), is authority for the equitable conversion theory. The damage claim is supported by Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450 (1977), in which a wanton trespass, entailing a severe cutting of plaintiff's trees, resulted in the award of compensatory and punitive damages.
Consequently, plaintiffs' demand for rescission and for damages relating to the real property should not be dismissed as a *430 matter of law. However, the relief sought by them is in the alternative: they may not have rescission and damages. Rescission will return the parties to their original positions; damages, with respect to the property, will be allowed only if the sale is consummated. Plaintiffs must therefore elect their remedy. Ray v. Beneficial Finance Co., 92 N.J. Super. 519 (Ch.Div. 1966); Ajamian v. Schlanger, 20 N.J. Super. 246 (App.Div. 1952).
Defendant's motion also seeks to strike certain words from the complaint on the ground that they are scandalous. The words are: "Defendant, by his criminal, immoral, unconscionable and outrageous acts of killing his wife and burying her on the premises which plaintiffs were in the process of purchasing and where they had hoped to reside...." It is these alleged acts of defendant, described in these terms, upon which plaintiffs base their suit; consequently, the words are not irrelevant and R. 4:6-5, which permits the striking of scandalous words, does not apply. De Groot v. Muccio, 115 N.J. Super. 15 (Law Div. 1971). This aspect of the motion must be denied.