**H.L.O., M.A.O., B.L.O., and R.S.O. by Their Father and Next Friend, L.E.O., Plaintiffs,**

**and**

**L.E.O. Individually and R.O. Individually, Appellants,**

**v.**

**Harold HOSSLE, Appellee.**

**A.S. by His Mother and Next Friend, T.L.S., Plaintiff,**

**and**

**T.L.S. Individually, Appellant,**

**v.**

**Harold HOSSLE, Appellee.**

No. 85–575.

Supreme Court of Iowa.

Feb. 19, 1986.

**642**

Jon H. Johnson of Leonard & Johnson, Sidney, for appellants.

F.J. Kraschel and Martha A. Heinicke of Kraschel Law Firm, Council Bluffs, and Lyle A. Rodenburg, Council Bluffs, for appellee.

UHLENHOPP, Justice.

The principal legal issue in this appeal is whether the tort of intentional infliction of extreme emotional distress arises in favor of individuals who were not present at the time of the incidents in question.

Plaintiffs L.E.O. and R.O. are the parents of H.L.O., M.A.O., B.L.O., and R.S.O. At the time of the events in question L.E.O. and R.O. were husband and wife. Subsequently their marriage was dissolved, and L.E.O. thereafter had custody of the children. We will refer to this family by the fictitious name of Oscar. Plaintiff T.L.S. is the mother and custodian of A.S. We will refer to these two by the fictitious name of Smith. A jury could find the following from the evidence.

The Oscar parents rented a house from defendant Harold Hossle next to his home on a farm. Hossle ingratiated himself with the Oscar children, becoming almost a substitute grandfather. Unaware of actual occurrences, the Oscar parents encouraged this relationship. A jury could find that in fact Hossle sexually abused the Oscar children by engaging in acts of fellatio, anal sex, and sadomasochism and by taking nude photographs of them, meanwhile threatening them with harm if they disclosed this conduct. Hossle engaged the Smith child with sexual activity on one occasion.

About two months after these occurrences, postal inspectors and the sheriff came to the Oscar home, showed the parents nude pictures of the children, and told them about Hossle's sexual activity. The parents went to the sheriff's office, where the children gave statements about the activities. Mr. Oscar testified by deposition, "Well, in the first place, I was totally appalled that something like this could happen.... And in the second place I was

totally goddamn mad." Mrs. Oscar described her feelings as "very upset and a feeling you can't describe and just a mental thing there." The family saw a psychologist, who recommended further treatment for all the Oscars. At the time the deposition was taken the Smith child was under treatment by a psychiatrist.

The parents and children of the two families sued Hossle in two tort actions, which were consolidated. Hossle settled with the five children by the purchase of annuities to pay each Oscar child $200 per month for life (but for not less than twenty years) plus $10,000 at age twenty-five and again at age thirty, and to pay the Smith child $100 per month for life (but for not less than twenty years) plus $5000 at age 25 and again at age thirty; and also to pay the children's attorneys $40,000. The settlement contained a condition relative to subjecting a child's payments to court orders in case the child was subsequently convicted of felony.

Hossle then moved for summary judgment on the parents' own claims. After hearing, the district court sustained the motion and dismissed those claims. The parents appealed. In their brief the parents state that they are not claiming for loss of consortium, hence the problem of double recovery in connection with that item is not involved. Rather, the parents claim two other items of damage: for (1) "expenses incurred on behalf of their children arising out of the tortious conduct of the defendant," and (2) "intentional infliction of mental distress."

■■■ I. *Expenses.* Rule 8 of the Iowa rules of civil procedure states:

A parent, or the parents, may sue for the expense and actual loss of services, companionship, and society resulting from injury to or death of a minor child.

Parents can recover for medical and related expenses incident to an injury to a minor child. *Gookin v. Norris,* 261 N.W.2d 692, 693 (Iowa 1978). Certainly the assaults and batteries inflicted on these children, if proved, constituted an "injury" to them. Under Rule 8, a wrong is done to the par-

ents in consequence of the injury to the children. *Dunn v. Rose Way, Inc.,* 333 N.W.2d 830, 832 (Iowa 1983). These parents would thus be entitled to recover their expenses incident to care and treatment of the children in consequence of Hossle's acts, if established.

The district court concluded, however, "[t]hat the adult plaintiffs have neither attempted to, nor alleged by any interpretation of the pleadings, a Rule 8, I.R.C.P. claim on behalf of the children." The parents, on the other hand, contend that their pleadings contain allegations which bring them within Rule 8.

At the outset we note that the parents are named as parties individually in the case. We also note that the prayer of the parents' petition is broad: the parents ask judgment against Hossle for amounts which will fully compensate them for special and general damages, other damages which the Court may deem them entitled to, and exemplary damages.

Turning to the allegations of the petition, counts I through IV relate to the children's claims; count I also alleges the facts as to all counts, and alleges the "plaintiffs'" damages including medical expense. Count V then relates to the parents' claims. It first incorporates the allegations of fact from count I. It next alleges the parents' damages including these: "a. Past doctor and hospital bills;" and "b. Future doctor and hospital bills;".

Under notice pleading, a claim for damages under Rule 8 was in the case. The district court should have overruled the motion for summary judgment as to expenses related to the children's injuries.

We do not consider the question of exemplary damages.

■■■ II. *Severe emotional distress.* The elements of an action for intentional infliction of severe emotional distress are set out in *Harsha v. State Savings Bank,* 346 N.W.2d 791, 800 (Iowa 1984). The district court held that the record did not develop a fact question on the elements.

Without passing on the other elements, we consider the question of whether this tort exists when an injury occurs to a third person but the plaintiff is not present at the time. The parents in this case did not learn about Hossle's alleged sex abuse of the children until approximately two months afterward.

The present position of the American Law Institute is stated in section 46(2)(a) of the Restatement (Second) of Torts (1965): "Where such [outrageous] conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family *who is present at the time*, whether or not such distress results in bodily harm." (Emphasis added.) By caveat, the Institute leaves open the question whether this requirement of presence will be modified in future decisions of the courts. Comment *l* to this section states:

Where the extreme and outrageous conduct is directed at a third person, as where, for example, a husband is murdered in the presence of his wife, the actor may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff. In such cases the rule of this Section applies. The cases thus far decided, however, have limited such liability to plaintiffs who were present at the time, as distinguished from those who discover later what has occurred. The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited, and the distress of a woman who is informed of her husband's murder 10 years afterward may lack the guarantee of genuineness which her presence on the spot would afford. The Caveat is intended, however, to leave open the possibility of situations in which presence at the time may not be required.

Professor Prosser states:

The decisions indicate that recovery in such cases is limited to plaintiffs who are not only present at the time, but are known by the defendant to be present, so that the mental effect can reasonably be anticipated by the defendant. The distinction between the wife who sees her husband shot down before her eyes, and the one who hears about it five minutes later, may be a highly artificial one; but it is perhaps justified by the obvious necessity of drawing a line somewhere short of the widow who learns of the decease ten years afterwards, when the genuineness and gravity of her distress may very reasonably be doubted.

W. Prosser, Torts § 12, at 61 (4th ed. 1971). Among the decisions supporting this view are *Manning v. Spees,* 216 Iowa 670, 246 N.W. 603 (Iowa 1933); *Howard v. Bloodworth,* 137 Ga.App. 478, 224 S.E.2d 122 (1976); *Knox v. Allen,* 4 La.App. 223 (1926) (later discovery of attack on child); *Ellsworth v. Massacar,* 215 Mich. 511, 184 N.W. 408 (1921); *Miller v. Cook,* 87 Mich. App. 6, 273 N.W.2d 567 (1978); *Gustafson v. Faris,* 67 Mich.App. 363, 241 N.W.2d 208 (1976); *Calliari v. Sugar,* 180 N.J.Super. 423, 435 A.2d 139 (1980); *Koontz v. Keller,* 52 Ohio App. 265, 3 N.E.2d 694 (1936); *Bennight v. Western Auto Supply Co.,* 670 S.W.2d 373 (Tex.App.1984). *Contra: Delia v. Jorres,* 134 Cal.App.3d 471, 184 Cal.Rptr. 787 (1932). *See Miller v. Superior Court,* 161 Cal.App.3d 1205, 208 Cal. Rptr. 25 (1984). This court did not nullify the presence requirement in *Blakeley v. Shortal's Estate,* 236 Iowa 787, 20 N.W.2d 28 (1945). In that case the plaintiff entered the kitchen and suddenly confronted the bloody body of the suicide. We have no comparable situation here.

The negligence cases involving bystanders are somewhat different, but the policy underlying them is applicable here. We set out that policy and the requirements for liability in *Barnhill v. Davis,* 300 N.W.2d 104, 106–08 (Iowa 1981). Much of what we said there by way of policy is applicable here, and we reaffirm that rationale. We hold that in the present case liability for severe emotional distress did not arise be-

cause of the unmet requirement of presence of the parents. The trial court properly granted summary judgment as to the part of the parents' claims relating to emotional distress.

■ Mrs. Oscar presented her own claim by amendment to Mr. Oscar's petition, joining him as a plaintiff. She timely filed the amendment to his petition and also filed a motion to allow the amendment. The motion does not appear to have been ruled on. If her amendment were filed now, it would be too late, and Hossle states in brief that the previously filed amendment is also too late because the accompanying motion was not ruled on. We think, however, that for purposes of the statute of limitations Mrs. Oscar tolled the running of the statute by actually filing the amendment. We see no occasion for striking the amendment, as it is pertinent to the case and Hossle has adequate time before trial to prepare against it.

The district court should have denied summary judgment as to the parents' claims for expenses but correctly granted it as to their claims for emotional distress.

AFFIRMED IN PART, REVERSED IN PART.

All Justices concur except LAVORATO, J., who takes no part.