Merle BATES *v.* Michael BATES

89-320                                     793 S.W.2d 788

Supreme Court of Arkansas
Opinion delivered July 16, 1990
[Supplemental Opinion on Denial of Rehearing
September 24, 1990.*]

---

*Hays and Glaze, JJ., would grant rehearing.

*Ben Seay* and *David J. Manley*, Legal Services of Ark., Inc., for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for the State of Arkansas.

*H. Joan Pennington* and *Laurie Woods*, National Center for Women and Family Law, and *Bill Rahn*, Ark. Legal Services Support Center for amicus curiae National Center on Women and Family Law.

*Marilyn Brown*, for amicus curiae Ark. Advocates for Children and Families.

*Caran Curry*, Prosecutor Coordinator, by: *Anne Orsi Smith*, Staff Att'y, for amicus curiae Office of the Prosecutor Coordinator.

*Compton, Prewett, Thomas & Hickey, P.A.,* by: *Robert C. Compton; Roberts, Harrell & Lindsey,* by: *Alan P. Roberts; Shackleford, Shackleford & Phillips, P.A.,* by: *Dennis L. Shackleford,* for appellee.

ROBERT H. DUDLEY, Justice. Appellee Michael Bates allegedly abused his wife, appellant Merle Bates. She filed a petition in chancery court pursuant to the Arkansas Domestic Abuse Act of 1989. Ark. Code Ann. §§ 9-15-101 to -211 (Supp. 1989). In the petition she sought an order to restrain appellee from committing future acts of domestic abuse and from entering their residence or her place of work, and to require him to pay child and housemate support. (Housemate support, not alimony or maintenance, because, pursuant to the act, she did not seek a divorce or separate maintenance. Further, it is not necessary that the parties be married to seek the protection of the act.) The petition was denied. The chancellor held that the act created a new cause of action and unconstitutionally placed jurisdiction of the new cause of action in chancery court. We affirm the holding.

The Arkansas Domestic Abuse Act provides that a petition

may be filed in chancery court to prevent domestic abuse. "Domestic Abuse" is generally described as causing harm to, or committing a sex offense against, any persons who presently or in the past have resided together. Ark. Code Ann. § 9-15-102 (Supp. 1989). An "order of protection" may include: restraining the abusing party from committing domestic abuse; excluding the offending party from the residence and the place of work of the victim; awarding custody and support of the children and support of the housemate; and awarding an attorney fee. A "temporary order of protection" may be granted upon ex parte application with a hearing to be held after notice. Ark. Code Ann. § 9-15-206(a) (Supp. 1989). The temporary order shall be effective for a period not to exceed fourteen (14) days. Ark. Code Ann. § 9-15-206(b) (Supp. 1989). Accordingly, the quintessence of the cause of action is preventing a person from committing acts of domestic abuse. The pivotal issue in this case is whether jurisdiction for such a cause of action lies in chancery court. That issue must be assessed within the narrow confines of equity jurisdiction under the Constitution of Arkansas.

Article 7, section 11 provides: "The circuit court shall have jurisdiction in all civil and criminal cases the exclusive jurisdiction of which may not be vested in some other court provided for by this Constitution." This provision means that unless a cause of action is confided by the Constitution exclusively to another court, it belongs exclusively, or concurrently, to the circuit court. *State* v. *Devers*, 34 Ark. 188 (1879). In other words "[a]ll unassigned jurisdiction under the Constitution is vested in the circuit court. . . ." *Patterson* v. *Adcock*, 157 Ark. 186, 248 S.W. 904 (1923). Article 7, section 15, provides: "Until the General Assembly shall deem it expedient to establish courts of chancery the circuit court shall have jurisdiction in matters of equity, subject to appeal to the Supreme Court, in such manner as may be prescribed by law." By Act 166 of 1903, Ark. Code Ann. § 16-13-301 (1987), separate courts of chancery were established by the General Assembly. However, the General Assembly is without authority to give chancery courts any jurisdiction other than that which the equity courts could exercise at the time of the adoption of the Constitution of 1874. *Patterson* v. *McKay*, 199 Ark. 140, 134 S.W.2d 543 (1939).

Appellant argues that the Domestic Abuse Act did not

impermissibly enlarge chancery court jurisdiction. She contends that "equity should take the necessary steps to protect victims of domestic abuse, since equity is intended to be adaptable and fluid to meet the changing needs of society." Certainly, equity does accord new or extraordinary relief in novel situations, but that does not at all mean that its jurisdiction can be enlarged in violation of the Constitution of Arkansas.

The appellant argues that the chancery court has jurisdiction to protect personal and property rights. Her general statement is valid, but equity can only protect personal and property rights when certain conditions are present. *Webber* v. *Gray*, 228 Ark. 289, 307 S.W.2d 80 (1957). One of those conditions is that the remedy at law is inadequate. Thus, the real issue is whether there is an adequate remedy at law. There is.

At law, a wife is entitled to protection from both actual physical abuse, Ark. Code Ann. §§ 5-26-301 to -304 (1987), and the risk or threat of such abuse, Ark. Code Ann. §§ 5-26-305 to -307 (1987). All "housemates" are protected by statutes prohibiting battery, Ark. Code Ann. §§ 5-13-201 to -203 (1987 & Supp. 1989); assault, Ark. Code Ann. § 5-13-204 to -207 (1987); harassment, Ark. Code Ann. § 5-71-208 (1987); harassing communications, Ark. Code Ann. § 5-71-209 (1987); and terroristic threats, Ark. Code Ann. § 5-13-301 (1987). Property rights are also protected by the burglary statute, Ark. Code Ann. § 5-39-201 (1987); the criminal trespass statute, Ark. Code Ann. § 5-39-203 (1987); and the forcible possession of land statute, Ark. Code Ann. § 5-39-210 (1987).

Appellant argues the above criminal statutes are ineffective because battered housemates are afraid to file criminal charges and prosecutors do not act diligently. Even if the arguments were valid, we would not ignore the jurisdictional language of the Constitution and, in doing so, deprive an accused of his Constitutional right to a trial by jury. Further, we are not convinced either of the arguments are valid. First, if a housemate is afraid to file a complaint in circuit court we cannot see any reason why she would not also be afraid to file it in chancery court. Second, Ark. Code Ann. § 16-21-103 (1987) provides that the "prosecuting attorney shall commence and prosecute *all* criminal actions in which the state or any county in his district may be concerned."

(Emphasis added.) Further, a victim need not depend upon the prosecuting attorney to institute criminal prosecution, she may cause such proceedings to be commenced by filing an affidavit with a magistrate. *Smith* v. *Hamm*, 207 Ark. 507 at 515, 181 S.W.2d 475 at 477 (1944).

Finally, the criminal laws and procedures in some instances protect potential victims. A potential victim may obtain a peace bond. *See* Ark. Code Ann. § 12-11-105 (1987). Further, after a domestic abuser is arrested the judge may impose conditions upon pre-trial release, including "reasonable restrictions on the activities, movements, associations, and residences of the defendant." A.R.Cr.P. Rule 9.1(b)(iii). Rule 9.3 authorizes orders which prohibit an individual from "approaching or communicating with particular persons or classes of persons, . . . going to certain described geographical areas or premises, . . . [or] engaging in certain described activities. . . ." If a policeman has "reasonable grounds" to believe that such an order has been violated he has the power to arrest the defendant. A.R.Cr.P. Rule 9.5(b). The court may then either impose additional conditions or revoke the release. A.R.Cr.P. Rule 9.5(c).

Additionally, except in narrow circumstances not present here, equity will not enjoin the commission of a crime because the remedy at law is adequate. The limited exception, articulated in *Smith* v. *Hamm*, 207 Ark. 507, 181 S.W.2d 475 (1944), arises when the criminal act is "incidental," and there is a danger of "irreparable pecuniary injury to property or pecuniary rights of the complaining party." If the rule were otherwise, the constitutional right of trial by jury would be infringed. *Smith* v. *Hamm*, 207 Ark. at 512, 181 S.W.2d at 478. *See also Maxwell* v. *Sutton*, 2 Ark. App. 359, 621 S.W.2d 239 (1981).

In sum, we cannot say the remedy provided at law is inadequate and, accordingly, one of the conditions necessary for equity to act to protect personal and property rights has not been met. Thus, the Chancellor correctly held that the Domestic Abuse Act impermissibly enlarged chancery court jurisdiction.

Appellant next argues that even if the Act is unconstitutional, and equity has no jurisdiction, we should not declare the whole Act invalid. Rather, we should allow domestic abuse proceedings to be held in circuit court. We cannot do so. The Act

does not contain a severability clause. When an act does not contain a severability clause, and the various parts of the act are so interdependent that it cannot be presumed the General Assembly would have enacted one section without the other, the whole act must fail. *Faubus* v. *Kenny*, 239 Ark. 443, 389 S.W.2d 887 (1965). The various parts of this Act are interdependent. It is a unitary approach to the problem of domestic abuse. There is simply no principal basis for finding any one part of the Act independent from the other.

Finally, we are certainly aware that domestic abuse does occur and is a serious problem. We applaud the general assembly's concern and hope that a way, consistent with the constitution, can be found to curb this recognized evil. Our duty in this case is not to determine whether domestic abuse occurs and to approve any legislation designed to stop it. Our duty is to determine whether our constitution permits the method selected by the general assembly in the legislation questioned in this case.

If we were to perceive the issue and take the steps the appellant and some of the *amici* briefs suggest, the jurisdiction of chancery court could be extended almost beyond imagination. For example, drunken driving is a serious problem. Even the Supreme Court of the United States has lamented the frightful carnage it spews upon our highways. *South Dakota* v. *Neville*, 459 U.S. 553, 558 (1983). The criminal laws have not stopped drunken driving, but we cannot use that fact as a reason to approve extending the jurisdiction of the chancery court to issue an "order of protection" against persons accused of, but not convicted of, drunk driving. Drug sales to children is a comparable problem, as is burglary. We cannot subvert the Constitution of Arkansas and allow the creation of a cause of action totally foreign to the equity jurisdiction of the chancery court just because we perceive and abhor a particular social ill. We are pledged to support the Constitution of Arkansas, and our duty is to follow it in this case as in any other.

Affirmed.

HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. My differences with the majority do not lie with the case law or statutes cited in its

opinion. I also agree with the majority that the main issue bearing on the Arkansas Domestic Abuse Act's constitutional validity depends upon whether the remedies provided by the Act are already adequately provided in courts of law, such as circuit court. If they are, the Act's attempt to provide the same remedies in chancery (equity) court is unconstitutional.

My strong objection with the majority is its conclusion that battered housemates and children have an adequate remedy under the state's criminal statutes which must be enforced in circuit court. The majority does a good job in listing criminal statutes that, indeed, cover a multitude of sins and aggressions. However, none of those laws provide for the removal of the abuser or perpetrator from the residence so as to prevent future violence.

At this point, I should mention that, in divorce cases filed in chancery court, parties routinely request and are given restraining orders or injunctions to prevent their spouses from (1) committing violence, (2) committing harassing acts, (3) going into or about the premises, (4) destroying property and (5) communicating by telephone or otherwise — just to name a few examples. Most importantly, this court, in *James* v. *James*, 237 Ark. 764, 375 S.W.2d 793 (1964), recognized that the fact an act enjoined also happens to be a criminal offense does *not* affect the power of a court of equity to enforce its order and the aspects of an act neither give nor oust equity of jurisdiction. The *James* court continued as follows:

> If it should be held that the imposition of a criminal penalty for violation of a law would deprive a court of equity of jurisdiction to enforce its orders then a person desiring to proceed or continue in violation of the law might be able to pay a maximum fine and, thus, make himself immune from a valid chancery court injunction. This is not and should not be the law.

The majority ignores the well-settled principles set out in *James*. Instead, it divests chancery court of its jurisdiction over matters involving the same type violence and harassment as existed in *James*, and in doing so, states there are criminal statutes under which the victim can seek protection. This reasoning is not only contrary to longstanding equity principles just discussed, but also it has been my experience as an attorney and

trial judge that obtaining relief in criminal court from family abuse or violence problems is wholly ineffective. The paramount relief family or household members seek in these matters is to remove the perpetrator from the residence and to restrain him or her from returning in an effort to avoid further contact. No criminal law is designed to achieve this type remedy.

Contrary to the majority court's suggestion. Arkansas's peace bond laws do not encompass such relief, but instead provide for the arrest of a person who threatens an offense against another and for a security (bond) by the person to insure his or her future good behavior. Ark. Code Ann. § 12-11-105 (1987). While a judge in the criminal division of circuit court may prove to be innovative and reach out for more authority, the peace bond provisions are solely implemented to require the posting of security and the forfeiting of the bond and punishing of the violator if he or she fails to keep the peace. No provision provides for the person's removal from the premises of the victim's residence or business.

After today's discussion, only married people, who file for absolute or limited divorce or separate maintenance, will be able to obtain the type relief that the General Assembly attempted to provide for all family or household members by enacting the Domestic Abuse Act of 1989. Such disparate treatment of family or household members seems, to me, to be constitutionally suspect.

I acknowledge the legal issues presented in this matter are not easy ones, and the majority court has done a good job in setting out the other side, leading to the view that the Act is unconstitutional. But I strongly disagree. Perhaps, the value of this litigation is that it underscores the major problems than can arise by having separate courts of equity and law. In most states, a general jurisdiction trial court has both equity and law powers. As a consequence, the legal mind twisting antics we have gone through in this case would be unnecessary because the trial judge in those states would not only have jurisdiction over criminal offenses, but also he or she would possess the power to enjoin or restrain acts to prevent domestic violence.

In conclusion, I note that, after it sets out its rationale for holding the Domestic Abuse Act unconstitutional, the majority

adds two paragraphs of what I would call hyperbole in justification of its position. In my view, the majority is more cavalier than thoughtful when it says, "If we were to perceive the issue and take the steps the appellant and some of the *amici* briefs suggest, the jurisdiction of chancery court could be extended almost beyond imagination." Soon after those remarks, it laments, "We cannot subvert the Constitution of Arkansas and allow the creation of a cause of action totally foreign to the equity jurisdiction of the chancery court just because we perceive and abhor a particular social ill. We are pledged to support the Constitution of Arkansas, and our duty is to follow it in this case as in any other."

The appellant and *amici* are hardly asking this court not to uphold the Arkansas Constitution. While the majority finds no merit in the arguments made by those parties, it is "beyond my imagination" how the majority can conclude the cause of action and injunctive-type relief they ask enforced under the Domestic Abuse Act can be called, "totally foreign to the equity jurisdiction of chancery court." Chancery court has exercised, and continues to exercise, such powers, as I have already discussed above. The court can only ignore its duty to support the constitution by failing to recognize the powers the constitution gives to chancery courts in this state. Instead, the appellant and other family members will be denied access to those powers and left only to possible criminal actions in circuit court, where no such preventive remedies are available. In my judgment, appellant's and *amici's* arguments are legitimate, meritorious and, at least in part, should be adopted by this court. While there may be some other problems with the Act's implementation, the Act is not deficient because abused or harassed household members can get adequate relief in the criminal division of circuit court. They cannot.

In any event, I remain of the view that Arkansas courts of equity have the power to enforce the provisions of the state's new Domestic Abuse Act. Therefore, I would reverse the trial court's holding to the contrary.

HAYS, J., joins this dissent.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
September 24, 1990

795 S.W.2d 359*

Petition for Rehearing; denied.

*Ben Seay* and *David J. Manley*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for intervenor the State of Arkansas.

*Shackleford, Shackleford & Phillips, P.A.*, by: *Dennis L. Shackleford; Compton, Prewett, Thomas & Hickey, P.A.*, by: *Robert C. Compton*; and *Roberts, Harrell & Lindsey*, by: *Alan P. Roberts*, for appellee.

PER CURIAM. The petition for rehearing is denied.

HAYS and GLAZE, JJ., dissent.

STEELE HAYS, Justice, dissenting. While I share Justice Glaze's strong disagreement with the result reached by the majority, I believe the solution is for this court to grant rehearing rather than for the General Assembly to attempt to place the remedies and procedures provided in the Domestic Abuse Act under circuit or municipal court jurisdiction, jurisdiction which does not readily lend itself to the objectives of the act.

The Domestic Abuse Act groups together equitable remedies to form a unitary approach for combating the overwhelming problem of domestic violence. The forms of relief granted by the act are distinctly equitable remedies traditionally exercised by courts of equity, thus the powers of chancery courts are not expanded. The act prescribes a simplified form enabling victims to promptly seek protective relief and provides for the deferment of filing costs and fees enabling the destitute victim to gain access to the courts. Historically, chancery has been the tribunal wherein the conduct cognizable under the act has been addressed and chancery is the appropriate forum to deal with such problems.

Until a domestic abuser inflicts serious physical injury or

---

*Justice Glaze's dissenting opinion can be found at 799 S.W.2d 518.

death on the victim, criminal justice procedures are, for all practical purposes, unavailing. The remedy sought by victims of domestic abuse is not after-the-fact punishment, but prevention. A perpetrator of domestic violence may indeed be arrested pursuant to our criminal laws, but after posting bond he can return home to resume the abuse. Often the abuser is the primary if not sole supporter of the family, therefore, jailing the spouse or demanding a high bond accomplishes very little.[1] Typically, the victim may also be intimidated into dropping any criminal charges filed against the abusive mate. In addition to these problems with the criminal process, evidentiary problems arise from the unique arena of the home.

Yet without factual development at the trial level, or any challenge to its constitutionality by the defendant (now the appellee), the Domestic Abuse Act was declared unconstitutional in its entirety by the chancellor, essentially on the theory that an adequate remedy at law is already available to the victims of domestic violence. That holding on a record wholly devoid of factual development, and notwithstanding the "heavy burden" that rests on one who challenges the unconstitutionality of an enactment, [*Gay* v. *Rabon*, 280 Ark. 5, 652 S.W.2d 863 (1983)] is palpably suspect.

This remedial legislation was designed to meet a compelling societal need and intended to correct an acute and pervasive problem involving violence and abuse within the family, the victims of which are invariably women and children. It was overwhelmingly enacted by the General Assembly, that branch of government most responsive to, and representative of, the general public. Before such enactments are struck down by the judicial branch of government, which is in no sense a representative body, nor intended to be, the constitutional infirmity must be *clear and convincing beyond a doubt*. Indeed, that is the rhetoric to which a legion of our cases subscribe. *Love* v. *Hill*, 297 Ark. 96, 759 S.W.2d 550 (1988); *Streight* v. *Ragland, Commissioner*, 280 Ark. 206, 655 S.W.2d 459 (1983); *Buzbee* v. *Hutton*, 186 Ark. 134, 52 S.W.2d 647 (1932) ("The conflict with the constitution must be unmistakable"); *Board of Commissioners of Red River*

---

[1] The monetary concern also rules out divorce and personal injury suits.

*Bridge District* v. *Wood*, 183 Ark. 1082, 405 S.W.2d 435 (1931) ("Statutes must be upheld unless *clearly* prohibited"); *Beaty* v. *Humphrey*, 195 Ark. 1008, 115 S.W.2d 559 (1938) ("The conflict with the constitution must be clear and palpable"); *Dobbs* v. *Holland*, 140 Ark. 398, 215 S.W. 709 (1919) ("Any doubt must be resolved in favor of a statute's validity"); *Poole* v. *State*, 244 Ark. 1222, 498 S.W.2d 628 (1968) ("Unconstitutionality must be obvious."). There has been no attempt in this case to show that any of the remedies provided in the act have not traditionally been exercised by courts of equity and I am unable to say that the Domestic Abuse Act is unconstitutional beyond doubt. I would grant rehearing.

TOM GLAZE, Justice, dissenting. While I strongly disagree with the result reached by the majority, I understand and respect my colleagues' views in deciding this case as they did, and ordinarily I would not write because the court chooses to deny rehearing. However, because this court holds the Domestic Abuse Act unconstitutional, this subject matter appears destined for the General Assembly once again. For that reason, I believe it might be helpful to point out at least one problem that body must consider if it attempts remedial action which merely places the remedies and procedures provided in the Act under circuit or municipal court jurisdiction.

One primary and vital object of the Domestic Abuse Act, as I understand it, is to remove the abuser or perpetrator from the residence or premises so as to prevent future violence towards housemates and children. As I noted in my earlier dissent, none of the state's criminal laws or procedures provide for the removal of the abuser — unless, of course, the person is convicted and incarcerated for his or her threatened or committed violent acts. It is primarily this reason why I disagree with the majority concerning its holding that the violated or abused person has an adequate remedy at law, i.e., in circuit court — which leads me to the point I wish to make.

Our court has previously held that circuit courts lack jurisdiction to grant and enforce equitable relief. *Cummings* v. *Fingers*, 296 Ark. 276, 753 S.W.2d 865 (1988); *see also id.* at 281 (Newbern, J., concurring); *Monette Road Improvement Dist.* v. *Dudley*, 144 Ark. 169, 222 S.W. 59 (1920); *contra Daley* v.

*Digby*, 272 Ark. 267, 613 S.W.2d 589 (1981); *cf.* Ark. Const. art. 7, §§ 15, 37; Ark. Code Ann. §§ 16-13-321 and 16-113-301 (1987). That being so, the General Assembly, I submit, cannot implement the equitable and necessary provisions of the Act merely by giving circuit courts (in place of chancery courts as the Act now provides) the authority to hear and enforce the Act. Stated in other terms, circuit courts, under the state's present judicial structure and this court's prior cases defining the powers of the state's respective general jurisdiction courts, do not, in my view, have the authority to remove or enjoin an abuser from family residences so as to prevent or correct the violent acts that are covered under the Domestic Abuse Act.

Other troublesome issues surrounding the Act's future implementation no doubt will surface. Nonetheless, I feel obligated to mention the one I have because the legal obstacle it poses is serious, and since it has not yet been discussed or briefed, I am hopeful my mentioning it might be helpful to the General Assembly when it reconsiders re-enactment of the Act my colleagues have declared unconstitutional.

The foregoing leads me to my final observation. In the forty-eight states where a trial court has both equity and law powers, the court has authority to remove abusers of housemates and children from the home. That being so, where does that court's authority go when a state, like Arkansas, splits its trial court into separate equity (chancery) and law (circuit) courts? Does that authority disappear? Or does that authority still exist and reside in equity courts, as it has existed in divorce cases for nearly a century? I believe the latter is true and, in my view, therein lies the greatest flaw in the majority's rationale and holding.