BURKS *v*. HARRIS.

Opinion delivered June 28, 1909.

1. LOTTERY—DEFINITION.—A lottery is a species of gaming which may be defined as a scheme for the distribution of prizes by chance among persons who have paid or agreed to pay a valuable consideration for the chance to obtain a prize. (Page 208.)

2. SAME—ENFORCEMENT OF CONTRACT.—Where a number of persons join together and purchase land, with the intention of dividing it in an unlawful method, namely, by lot, the test to determine whether the vendor is entitled to recover for the purchase money is his ability to establish his case without aid from the unlawful transaction. (Page 208.)

3. SAME—ILLEGALITY OF CONTRACT.—Where 200 lots of land of varying values were sold to as many different persons at a uniform price, under an agreement that the lots should be apportioned to the purchasers by chance, and that the vendor should convey the lots so apportioned to their respective purchasers, the contract contemplated a violation of law, and was not enforceable. (Page 209.)

Appeal from Benton Chancery Court; *T. Haden Humphreys,* Chancellor; affirmed.

*Dick Rice,* for appellant.

In order to avoid the contracts, the vice pleaded must go to the substance of the contracts as and at the time executed. If the vice and illegality go only to the mode of execution, which is not a part of the contract at its inception, it is not vitiated. The burden of proof is on the party alleging the illegality of the transaction. 8 Am. & Eng. Enc. of L., 1008 and cases cited in note 2 ; *Id.* 1010.

*McGill & Lindsey,* for appellees.

Conceding that the benefits to be derived from the building of the hotel constituted a valuable and legal consideration, the contract is not enforcible because the other consideration is illegal. 21 Ind. App. 347; 69 Am. St. Rep. 360. The method of distributing the lots was a lottery. The drawing being illegal, there can be no recovery. 18 Am. & Eng. Enc. of L., 993; 47 Ark. 378; 67 Ark. 480; 25 Cyc. 163; 19 Am. & Eng. Enc. of L. 591; 144 Ind. 86; 21 Ind. App. 347; art. 19, § 14, Const. 1874; 15 Am. & Eng Enc. of L. 937; 19 *Id.* 592; Kirby's Dig. §§ 1862-3, 1732-3.

McCULLOCH, C. J.   At a mass meeting of citizens of Bentonville, Arkansas, the plaintiff, W. A. Burks, proposed, on condition that the citizens of Bentonville should, within fifteen days from that date, purchase from him, at the price of $50 per lot, two hundred lots, fifty by one hundred fifty feet in size each, to be surveyed and platted out of a certain tract of land adjoining said city of Bentonville, to erect near Spring Park, on a tract of land known as "Spring Park Addition," a hotel building of certain dimensions and capacity, and to make certain other improvements on the premises so as to make the place an attractive resort. The lots were to be selected after the plat should be made, and the same were to be paid for as follows:   One-half when the walls and roof of the hotel should be completed, and the balance when the whole improvements were completed. A committee was appointed by the assembled citizens to solicit purchasers in order to accept the plaintiff's proposition.

The committee secured a large number of subscribers or purchasers, each agreeing to purchase a certain number of lots at the price named, and out of these the plaintiff selected two

hundred, and they each executed to him an obligation in writing which, after reciting the plaintiff's undertaking with respect to erecting the hotel building, etc., is as follows:

"Now, therefore, in consideration of the above agreement and the benefits arising to the undersigned and the citizens of Bentonville, and the further agreement that the said W. A. Burks is to execute and deliver or cause to be executed and delivered a warranty deed conveying to J. W. Harriss one lot, the particular location to be hereafter determined, each lot to be 50 x 150 feet, situate on the following described tract of land situate in Benton county, Arkansas, to-wit: the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 19, and the N. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 30, township 20, range 30, we, the undersigned, promise to pay the said W. A. Burks the sum of fifty dollars at the Fidelity Savings Bank & Loan Company, in the city of Bentonville, upon the following terms: One-half of said sum when the walls of the said hotel building and roof thereon shall be completed, the remaining half to become due and payable when the said hotel, the dam and the six cottages shall have been completed according to contract. and that this note shall bear interest at the rate of ten per cent. per annum from date when said payment shall fall due until paid."

The plaintiff then caused the tract of land in question to be surveyed and platted into 330 lots, out of which number the committee selected two hundred, to be conveyed to the purchasers as soon as it should be determined what particular lot or lots each purchaser should receive. These lots were of unequal value, some worth practically nothing, and some worth double the price named.

The committee decided to distribute or apportion the lots to the respective purchasers by a chance, each purchaser to take the lot drawn by him, and this plan was accepted and carried out. The plaintiff did not propose this plan, but he acquiesced in it, and was present at the drawing. It was proposed and carried out by the committee who represented the citizens and purchasers. The plaintiff erected the proposed building and other improvements, and demanded payment from the purchasers of their respective obligations. He also executed and tendered to them deeds conveying the several lots apportioned to them in the drawing. Defendants Harriss, Armstrong, Crowell, Duckworth,

Bates, Stevenson, Porter, Maxwell, Hildebranth and Graham each declined to accept the lots so apportioned to them and refused to pay the price. The plaintiff instituted separate suits in equity against them, to recover the several amounts due, and to foreclose his alleged lien on the lots apportioned to them. These suits were consolidated and tried together, and a decree was rendered dismissing the complaint for want of equity, and the plaintiff appealed.

The defense asserted by each of the defendants was, among other things, that the scheme for the sale and distribution was a lottery, in violation of the law. "A lottery is a species of gaming, which may ·be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." 25 Cyc. 1633.

The Constitution and statutes of this State make it unlawful to conduct a lottery or to sell or otherwise dispose of lottery tickets, gift concert tickets, or the like. Constitution of 1874, art. 19, § 14; Kirby's Dig., § § 1862, 1863. Contracts for the sale of tracts of land of unequal value, to be apportioned among the purchasers by lot, are held in many cases to be within the statute against lotteries; and it is immaterial that every purchaser is to receive some return. *Paulk* v. *Jasper Land Co.,* 116 Ala. 178; *Elder* v. *Chapman,* 176 Ill. 142; *Lynch* v. *Rosenthal,* 144 Ind. 86; *Den* v. *Shotwell,* 24 N. J. L. 789; *Seidenbender* v. *Charles,* 4 S. & R. 151.

It is insisted, however, that where it is no part of the original contract of sale that the lots shall be divided by chance, and the vendor does not direct or make himself a party to the unlawful distribution, the contract is not vitiated, and that a recovery may be had thereon. The principle thus stated in the contention is undoubtedly sound, for where a number of parties join together and purchase lands, even with the intention of dividing it in an unlawful method, the vendor is not a party to the scheme, and is entitled to recover the agreed price. In that case the unlawful scheme for the division by lot is not a part of the original contract of sale.

In *Martin* v. *Hodge,* 47 Ark. 378, which involved to some extent the same principles which must control here, the court

said: "The test to determine whether a plaintiff is entitled to recover in an action like this or not, is his ability to establish his case without any aid from an illegal transaction; if his claim or right to recover depends on a transaction which is *malum in se* or prohibited by legislative enactment, and that transaction must necessarily be proved to make out his case, there can be no recovery."

Now, in applying that test to the present action, it becomes necessary to inquire particularly as to what the contract was between the parties. It will readily be observed that it was not a joint contract on the part of the subscribers or purchasers to purchase together a quantity of land to be subsequently distributed or apportioned among themselves according to a method of their own selection. If such were the case, each purchaser would be bound by the purchase, and would be obligated to accept and pay for his undivided part of the lands so purchased, and the vendor would not be concerned in the method of its apportionment or allotment between the several purchasers. The contract in this case is in writing and speaks for itself. Each subscriber or purchaser agreed to become the purchaser of a lot, to be thereafter selected, of given dimensions and for a certain stipulated price. There were 200 of these subscribers, and they separately agreed in these contracts to purchase lots of the same dimensions and at the same price, but of unequal value. The sale to each purchaser was not complete until the lot was selected, and the method of selecting the lot was necessarily a part of the contract. It was necessary for the plaintiff to prove the distribution of each lot in order to show a completion of the contract and his right to recover thereon; for the purchaser did not agree to pay until the lot should be apportioned and set aside to him. Applying the test laid down by this court in *Martin* v. *Hodge, supra,* it was necessary for the plaintiff, in order to make out his case, to prove an illegal transaction whereby the lots were set apart and apportioned to the respective purchasers. While the evidence in this case does not establish the fact that the plaintiff selected the method of apportioning the lots, yet the contract itself necessarily made him a party to whatever method was selected, because, until the apportionment of the lots, the contract was not complete and susceptible of enforcement. The obligation

which he accepted from the various purchasers contemplated that the distribution would be entirely by chance, and without reference to the actual value of the lots. It was not susceptible of the interpretation that a lawful method would or could be adopted whereby the lots were to be distributed. It could mean nothing else save that these lots of unequal value should be apportioned among the purchasers without regard to values, for each purchaser agreed to take a lot of the stipulated dimensions, no more, no less, and to pay the uniform price named, no more and no less. It was necessarily not in the contemplation of the parties at the time the contract was made that any regard to value should be had in the distribution of the lots, or that the values should be equalized in distributing them.

There is a decision of the Supreme Court of Iowa which, at first glance, appears to be in conflict with the views we have herein expressed; but, on careful analysis of the facts of that case, we find that it is clearly distinguishable from this. There certain promoters engaged in an enterprise with a packing company to erect its plant at the city or town named, and entered into a contract with the owners of a tract of land that the same should be platted and sold to subscribers or purchasers at a uniform price, and that the same were to be distributed among the subscribers according to methods to be thereafter selected by the latter. The subscribers were procured, and the lots platted and conveyed to the promoters for distribution among the subscribers, and the latter agreed upon and carried out a plan of distribution by drawing, similar to that adopted in the present case. The promoters had nothing to do with the adoption of the method of distribution. The court held that the contract was not vitiated by the agreement between the promoters and the purchasers for a distribution by chance. It is clear from the opinion, however, that the court treated the transaction as a purchase of the whole tract by the promoters, who held the title as trustees for the subscribers. The court said:

"It thus appears that there must be some plan or scheme on the part of the promoters of the enterprise alleged to be unlawful for the sale or disposition of property by lot or chance before it can be said to have the character of a lottery. If the sale is without the purpose that the property, or any part of it, shall

be obtained by the purchaser through chance, and this does not result from the nature of the transaction, then it is not so tainted. The sale of the lots to the subscribers in this case was not in pursuance of any design to promote a lottery, or in evasion of the law." *Chancery Park Land Co.* v. *Hart,* 104 Iowa 592.

The facts of the present case do not fall within the rule announced in that case. Here there was no completed purchase of any particular lot, but as we have already shown, the contract of purchase depended upon a subsequent method thereafter to be agreed upon for the distribution of the lots. In other words, it was not a purchase of an undivided tract and subsequent agreement of a division by chance, but it was a separate purchase by which each subscriber bought lots, the particular identity of which was to be determined by chance.

The correct distinction is, we think, drawn by the Supreme Court of Illinois in *Elder* v. *Chapman,* 176 Ill. 142, wherein it is said: "There is a broad distinction, however, between a division of property by lot and lottery. A partition of property into parts as nearly equal as possible, where owned by joint owners, may be made and a determination had by lot as to which part shall go to each joint owner severally, without coming within the prohibition of the statute. The joint owners being seized of the whole estate before partition, and the object of the lot being to assign to each his particular portion, the whole having been previously divided into parts as nearly of equal value as possible, such partition would not constitute a lottery."

We are of the opinion that the contract of sale contemplated an unlawful method of performance, and that the decree of the chancellor was correct.

Affirmed.