Donna M. MASTERSON and DG's Shiloh Two, Inc. *v.*
STATE of Arkansas ex rel. Winston Bryant, Attorney General

96-1064                                        949 S.W.2d 63

Supreme Court of Arkansas
Opinion delivered July 14, 1997

*Everett Law Firm*, by: *William B. Putman*, and *Mashburn & Taylor*, by: *Timothy L. Brooks*, for appellants.

*Winston Bryant*, Att'y Gen., by: *James DePriest*, Senior Asst. Att'y Gen., for appellees.

RAY THORNTON, Justice. Donna M. Masterson owns and controls DG's Shiloh Two, Inc. Both are appellants in this action. Between January 1993 and August 1996, DG's Shiloh Two owned, and Donna Masterson managed, two bingo halls located in Springdale, Arkansas. In January, 1993, the State of Arkansas *ex rel.* Winston Bryant, Attorney General, appellee, filed a complaint in the chancery court of Washington County against appellants alleging that the bingo operations constituted public nuisances and seeking an order to abate and enjoin such activities. Other operators of bingo halls were named but were dismissed when they discontinued their bingo operations. Appellants continued to operate their bingo halls and agreed with appellee to submit the matter to the chancery court upon stipulated facts.

Appellants argued that appellee failed to allege irreparable harm as a basis for injunctive relief, and urged that the adoption by the state of Ark. Code Ann. §§ 26-52-1501—1507 (Supp. 1995), which taxes gross receipts from bingo operations, under which appellants remitted $316,266.00 in taxes to the state, supports

appellants' contention that the bingo halls are not public nuisances. Appellants also argued that the chancery court lacked subject-matter jurisdiction.

On August 12, 1996, the chancery court entered a decree abating the bingo activities as a public nuisance and enjoining the appellants from continuing such activities. On appeal, appellants assert that the chancery court erred in finding that their bingo operations constituted a public nuisance, and further contend that the court lacked subject-matter jurisdiction to conclude that bingo is a lottery or to abate and enjoin such activity. Finally, appellants argue that the court erred in not granting their motion for summary judgment. We have considered each assignment of error and have determined that the trial court should be affirmed. This resolves any issue concerning summary judgment.

### Subject-Matter Jurisdiction of Chancery Court

■  Appellants correctly state the general rule that a chancellor has no criminal jurisdiction. *State v. Vaughan*, 81 Ark 117, 98 S.W. 685 (1906). Further, it is correct that "except in narrow circumstances . . . equity will not enjoin the commission of a crime because the remedy at law is adequate." *Bates v. Bates,* 303 Ark 89, 93, 793 S.W.2d 788, 791 (1990). However, there are circumstances to which we refer in *Bates* and other cases where both criminal and equitable relief are appropriate. In a case involving an erroneously granted exception to the provisions of a city ordinance prohibiting the erection of a nonfireproof building, the chancery court refused to issue an injunction against the prohibited structure because the ordinance prescribed criminal punishments of a fine for each day of violation. *Meyer v. Seifert,* 216 Ark 293, 225 S.W.2d 4 (1949). The appellees in that case argued that the criminal penalty was exclusive. We disagreed and reversed, stating in the words of Justice Robert A. Leflar:

> That equity will not act to restrain ordinary violations of the criminal law, but will leave the task of enforcing the criminal laws to courts having criminal jurisdiction, is basic learning in our legal system. But it is equally basic that if grounds for equity jurisdiction exist in a given case, the fact that the act to be

enjoined is incidentally violative of a criminal enactment will not preclude equity's action to enjoin it.

*Id.* at 296-97, 225 S.W.2d at 6.

In *State ex rel. Att'y Gen. v. Karston,* 208 Ark. 703, 187 S.W.2d 327 (1945), we decided that the chancery court erred in refusing to entertain jurisdiction of an injunction proceeding brought by the Attorney General seeking to enjoin the operation of a gambling house and stated:

> The chancery court held that it had no jurisdiction in this case. We have repeatedly recognized that equity has authority to abate a public nuisance. In *Ross et al. v. State,* 184 Ark. 385, 42 S.W.2d 376, we quoted from *Marvel v. State,* 127 Ark. 595, 193 S.W.2d 259, 5 A.L.R. 1458, as follows: "The Legislature has not conferred the jurisdiction upon the chancery court to abate public nuisances. *This jurisdiction they have always had.*"

*Id.* at 710, 187 S.W.2d at 330 (emphasis added).

We also quoted with approval the statement from 39 AM. JUR. 410, as follows:

> Where the act is both a public nuisance and a crime, the state may suppress it by a suit in equity, or resort to a criminal prosecution, or may do both. . . . To warrant an injunction where the nuisance is also a crime, there must be proof of what that law denominates a nuisance as distinguished from a mere crime.

*Id.* at 711, 187 S.W.2d at 330.

In an earlier case involving the same gambling house, *Albright v. Karston,* 206 Ark. 307, 176 S.W.2d 421 (1943), we reversed the local chancellor's decree protecting the gambling house from interference by the state police. We pointed out that "a gambling house was a public nuisance at common law, and the operation of a gambling house has by statute been made a felony in Arkansas." *Id.* at 311-312, 176 S.W.2d at 328.

In *State ex rel. Att'y Gen. v. Karston, supra,* we cited many decisions declaring a gambling house to be a public nuisance at common law, determined that the Attorney General has the power and duty under common law to institute equitable proceedings to enjoin the nuisance, and summed up as follows:

> [B]y the weight of authority, equity may act to suppress a public nuisance, even though the maintenance of the nuisance is a crime, where there is alleged in addition to the public nuisance, some facts which show the remedy at law, by prosecution of the criminal, is inadequate and incomplete to effect relief.

*Id.* at 712, 187 S.W.2d at 331.

In the case under consideration we note that the stipulation of facts, considered together with the principles we have reviewed, support the chancery court's following conclusions of law:

> That each of the bingo halls at issue in this case have operated (openly, publicly, repeatedly, continuously, persistently, and intentionally) on a regular basis for an extended period of time, notwithstanding any potential application or enforcement of any criminal statutes. *It appears to this court that, whatever remedy may exist at law, it has proved to be inadequate.* (Emphasis added.)

■■ We will not reverse the findings and conclusions of a chancery court unless they are clearly erroneous. *Osborne v. Power*, 318 Ark. 858, 890 S.W.2d 570 (1993). We conclude that the findings are not clearly erroneous, and agree with the chancery court's conclusion of law "that this Court, as a court of equity, has jurisdiction to abate a public nuisance." We hold that the chancery court has subject–matter jurisdiction.

### Bingo Halls as a Public Nuisance

■ In reviewing the question whether the chancery court had subject–matter jurisdiction to enjoin a public nuisance, we cited *Albright v. Karston, supra* and *State ex. rel. Att'y Gen. v. Karston, supra,* for guidance as to the availability of equitable relief when criminal penalties are also available. In these cases, we pointed to many other cases that declared gambling houses to be public nuisances at common law. The availability of equitable relief to enjoin a gambling activity was discussed in *Meyer v. Seifert,* where we stated:

> In one of the most publicized cases that ever arose in Arkansas, Chancellor Martin enjoined the holding at Hot Springs of a world championship heavyweight prize-fight between James J.

Corbett and Robert Fitzsimmons. *State ex rel. Atty. Gen. v. Corbett, Fitzsimmons, et al.*, Martin's Chanc. Decisions 366. Judge Martin conceded that ordinarily equity does not enjoin the commission of crimes, but pointed out that it does issue such injunctions where property interests are involved, and emphasized the prospective property injuries threatened by the prizefight, notably the payment of money by purchases of tickets of admission to the illegal enterprise, losses by bettors . . . .

*Id.* at 297, 225 S.W.2d at 6-7.

This articulation of possible property losses incurred through gambling activities may reflect the rationale for decisions that a gambling house constitutes a public nuisance at common law. The protection of property rights of the public affected by illegal gambling activities meets the test for equitable relief suggested by Chief Justice Hill in *State v. Vaughan*, where after denying the injunction in the particular case, we added:

On the other hand, if the public nuisance is one touching civil property rights or privileges of the public, or the public health is affected by a physical nuisance, or if any other ground of equity jurisdiction exists calling for an injunction, a chancery court will enjoin, notwithstanding the act enjoined may also be a crime.

*Id.* at 126, 98 S.W. at 690.

Appellants argue that because the state is taxing its bingo operations, those operations cannot be considered a nuisance. We have considered a similar argument that Act 939, (codified at Ark. Code Ann. §§ 26-52-1501—1507 (Supp. 1995)), legalizes bingo in our recent decision in *Billy/Dot, Inc. v. Fields*, 322 Ark. 272, 908 S.W.2d 335 (1995), where we stated:

Billy/Dot admits that it operates a bingo establishment where money is at risk, but it is wrong in contending that Act 939 legalizes bingo. The Act specifically does not make bingo legal, as is evidenced by its Emergency Clause: "[T]hat this tax and the requirement for annual registration are not intended to address any question of legality or illegality of the conduct of playing bingo;" Act 939 only provides for taxation of bingo revenues. Because there is no lawful business operation at issue here, there is no valid property right to be protected in this matter.

*Id.* at 277, 908 S.W.2d at 337. In *Billy/Dot,* we also made the following determination:

> Here, there is no question but that playing bingo for money constitutes gambling which is a criminal offense under our statutes, and the chancery court so found. In doing so, the court correctly cited *State v. Torres,* 309 Ark. 422, 831 S.W.2d 903 (1992), in its order.

*Id.*

■ The operation of a commercial bingo hall meets the definitions of a gambling house, and is therefore a common-law public nuisance. In the case before us it was stipulated that the operation of the bingo halls has been profitable enough to make necessary the payments of taxes of $316,266.00 on gross receipts from July 1993 until June of 1996, and that appellants intend to continue the activities, thereby showing that the operation of the gambling houses have resulted in losses to the public patrons of money from their purchase of cards and pull-tabs from which the proceeds are at least sufficient to pay appellant's taxes. It was also stipulated that no prosecution has been initiated against those operations by anyone, thereby showing that the prosecuting attorney has not brought criminal charges. Whether this is because of the difficulty in gaining convictions, or a belief that other criminal violations have higher priority, or because the prosecuting attorney simply chooses not to prosecute is not relevant. The stipulation that no prosecution has occurred notwithstanding the open continuous, and lucrative operation of the public nuisance supports the chancery court's conclusion that there is no adequate remedy at law. Equity may act to suppress a public nuisance where the remedy at law is inadequate and incomplete. *State ex rel. Att'y Gen. v. Karston, supra.*

Appellees urge that appellants' operation of commercial bingo halls should be declared to be a public nuisance because it flouts the public policy of Arkansas, as expressed in the prohibition against lotteries contained in Ark. Const. art. 19, § 14.[1] We need

---

[1] Article 19 § 14 provides, "no lottery shall be authorized by this state, nor shall the sale of lottery tickets be allowed." The term "lottery" has been defined in *Burks v. Harris,*

not address that argument because of our determination that appellants are operating gambling houses, and that such activities are public nuisances under the common law.

## Conclusion

On the basis of the stipulations agreed to in this case, the chancery court found that appellants' bingo halls are public nuisances that have operated openly, continuously, and intentionally, for an extended period of time, without any application or enforcement of criminal penalties. The chancery court made specific findings and conclusions of law, including the following:

> That each of the bingo halls. . .have operated on a regular basis for an extended period. . .notwithstanding any potential application or enforcement of any criminal statute. It appears to this court that, whatever remedy may exist at law, it has proved to be inadequate.
> That the bingo activities conducted by defendants should be abated as a public ˙ nuisance and each defendant should be enjoined and restrained from conducting any further bingo activities.

These findings and conclusions are not clearly erroneous, and are consistent with the principles of law we have articulated. The judgment of the chancery court is affirmed.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. I dissent for the reason that the chancery court lacked jurisdiction to enjoin Appellants' operation of two bingo halls as public nuisances. At first glance, the majority opinion appears to rely upon this court's decision in *State ex rel. Att'y Gen. v. Karston*, 208 Ark. 703, 187

---

91 Ark. 205, 120 S.W. 979 (1909), as containing three essential elements; consideration, chance, and prize. .We also note that Ark. Code Ann. § 5-66-119 (Repl. 1993), provides that engaging in activities ordinarily described as chain letters or pyramid schemes for cash or other compensation is participation "in a lottery, which is declared to be unlawful," and further provides for the chancery court to enjoin such activities upon complaint by the Attorney General or prosecuting attorney.

This legislative declaration that equitable relief is appropriate to abate the public nuisance of an unlawful lottery is consistent with our own holding.

S.W.2d 327 (1945), quoting parts of that decision that are favorable to the majority's conclusion. Upon closer examination, however, it becomes clear that the majority completely ignores the ultimate holding of that decision:

> [T]he state may properly seek to protect the community by asking the aid of a court of equity *where the criminal law enforcement agencies have broken down, and thereby rendered the remedy at law to be inadequate or incomplete.*

Id. at 716, 187 S.W.2d at 333 (emphasis added). Contrary to the majority's implication, that decision did not rest on prior holdings that gambling houses were common-law nuisances. Nor did it provide that whenever a criminal law is being violated, the State may put an end to it by seeking an injunction on the ground that the criminal activity is, in and of itself, a public nuisance. Instead, the decision in *Karston* turned upon the particular facts of that case, which are drastically different from those in the present case.

Karston, who was a notorious bookmaker in Hot Springs, had been arrested for gambling no less than ten times, but to no avail because he continued his bookmaking operations after his arrests. Moreover, there were allegations in that case that the local law enforcement agencies were condoning Karston's activities and had refused to prosecute him on the charges. This court thus held that because the criminal law had broken down, rendering the remedy at law inadequate, equity had the power to enjoin the activity as a public nuisance. Here, there was no evidence or even allegation that the activities of the bingo halls constituted a public nuisance beyond the mere contention that they were being operated in violation of the law. No citizen complaints were heard and no allegations were made that anyone had suffered injury as a result of the bingo operations. In short, there was no demonstration that the criminal law had broken down such that equity became empowered to enjoin the activity as a public nuisance.

The first case to address the issue of whether equity could issue an injunction to stop a gambling operation was *State v. Vaughan*, 81 Ark. 117, 98 S.W. 685 (1906). In that case, this court held:

It is demonstrably true that it is a sound principle of equity jurisprudence that *an injunction will not lie at the instance of the State to restrain a public nuisance where the nuisance is one arising from the illegal, immoral or pernicious acts of men which for the time being make the property devoted to such use a nuisance, where such nuisance is indictable and punishable under the criminal law.* On the other hand, if the public nuisance is one touching civil property rights or privileges of the public, or the public health is affected by a physical nuisance, or if any other ground of equity jurisdiction exists calling for an injunction, a chancery court will enjoin notwithstanding the act enjoined may also be a crime.

*Id.* at 126, 98 S.W. at 690 (emphasis added).

In *Karston,* this court relied on the above language from *Vaughan,* as well as the decision in *DeQueen v. Fenton,* 98 Ark. 521, 136 S.W. 945 (1911), which held that the chancery court has no criminal jurisdiction, and thus, has no jurisdiction to restrain acts *solely* because they are criminal. Additionally, the *Karston* court cited 39 Am. Jur. *Nuisances* § 147 (1942) for the proposition that "[t]o warrant an injunction where the nuisance is also a crime, there must be proof of what that law denominates a nuisance as distinguished from a mere crime." *Karston,* 208 Ark. at 711, 187 S.W.2d at 330. In other words, in order for equity to enjoin criminal activity, there must be evidence that the activity is a nuisance, in the traditional meaning of that term, in addition to the fact that the activity is a crime.

Subsequent to the decision in *Karston,* in *Hickinbotham v. Corder,* 227 Ark. 713, 301 S.W.2d 30, *cert. denied,* 355 U.S. 841 (1957), this court held that there were only two instances where chancery will assume jurisdiction to enjoin the commission of a criminal offense: (1) Where the enforcement of the criminal law will not deter violation, or (2) where the complaining party has shown an injury. Here, enforcement of Ark. Code Ann. § 5-66-103 (Repl. 1993) would deter violations of the law in that the persons convicted of gambling shall be sentenced to one to three years in prison. Moreover, in this case, the complaining party, the State, has shown no injury. There was absolutely no indication at all that any property owners or other citizens had complained about any adverse affects resulting from the bingo halls' operations.

More recently, in *Bates v. Bates*, 303 Ark. 89, 793 S.W.2d 788 (1990), the appellant sought to have the chancery court enjoin her housemate from committing acts of domestic abuse against her under a theory that chancery has jurisdiction to protect personal and property rights. This court held that equity may only protect those rights when certain conditions are present, one of which is where the remedy at law is inadequate. Appellant argued that the criminal statutes were ineffective because battered housemates are afraid to file criminal charges and prosecutors do not act diligently. This court held that "[e]ven if the arguments were valid, we would not ignore the jurisdictional language of the Constitution and, in doing so, deprive an accused of his Constitutional right to a trial by jury." *Id.* at 92, 793 S.W.2d at 790. This court held further that "equity will not enjoin the commission of a crime because the remedy at law is adequate. . . . If the rule were otherwise, the constitutional right of trial by jury would be infringed." *Id.* at 93, 793 S.W.2d at 791. This court did acknowledge a limited exception to that rule, which arises when the criminal act is "incidental" and there is a danger of "irreparable pecuniary injury to property or pecuniary rights of the complaining party." *Id.* at 93, 793 S.W.2d at 791 (quoting *Smith v. Hamm*, 207 Ark. 507, 181 S.W.2d 475 (1944)). Such exception is not applicable to this case because the criminal act of operating a gambling house was the sole reason for enjoining the activity.

In the present case, there was no evidence whatsoever that the criminal law had broken down or that the remedies at law were inadequate. In fact, there was no evidence that the legal remedy had even been attempted before the State filed for an injunction. Instead, the facts presented below indicate that the bingo halls had been in operation since January 1, 1993, and that the State filed its suit for injunction a mere twenty-one days later. It was stipulated by both parties that Appellants had never been arrested for any violation of the law pertaining to their bingo operations, and that further, there were no allegations concerning rowdiness, drunkenness, excessive traffic, loud noises, or any of the more traditional nuisances.

The trial court's ruling that the remedies available at law were inadequate just because the bingo halls had been in continual

operation for some time is clearly erroneous. It is not enough to render the legal remedy inadequate to merely point to the fact that a criminal offense has been committed. According to our case law, there must be more — i.e., an allegation that local law enforcement authorities have refused to enforce the criminal law or that the bingo operators have been arrested in the past and such arrests have not deterred their illegal gambling activities. The majority's decision in this case circumvents the constitutional right to trial by jury, by allowing courts of equity to stop allegedly criminal activity and deprive the actors of their livelihood without requiring the State to prove beyond a reasonable doubt that such actions are criminal.

For the reasons given, I would reverse the ruling of the chancery court and dismiss the case.