The Honorable Stuart Vess State Representative 6717 Pontiac Drive N. Little Rock, AR 72116-5232
Dear Representative Vess:
You have requested an Attorney General opinion concerning the legality of bingo under particular circumstances. You describe those circumstances as follows:
 A business has an employees' club that costs money to join (an annual fee of $2.00 per person). Members of the club can bring guests who are not employees of the business. One of the activities offered to members of the club is bingo. It does not cost any additional money to play the game, and prizes ranging from hats to color televisions (but not cash) can be won.
On the basis of the foregoing scenario, you have presented the following questions:
 (1) Is the above-described scenario legal under the state constitution's prohibition against gambling and games of chance, in light of the state supreme court's decision in Masterson v. State, or would the bingo game be considered illegal gambling?
 (2) If players could win cash prizes, how would the answer to Question 1 change?
 (3) If the answer to Question 1 is that the game is illegal, is it conceivable that the non-members who are guests are actually playing legally since they have not paid any money to play?
RESPONSE
Question 1 — Is the above-described scenario legal under the stateconstitution's prohibition against gambling and games of chance, in lightof the state supreme court's decision in Masterson v. State, or would thebingo game be considered illegal gambling?
As an initial matter, I must note that it is unclear whether you are asking for an evaluation of the above-described scenario under the constitutional prohibition against lotteries (Ark. Const., art. 19, §14), or under the criminal statutory prohibitions against gambling (A.C.A. §§ 5-66-101 et seq.). I will address both issues.
It is my opinion that the above-described scenario violates the constitutional prohibition against lotteries.
Under the Arkansas Supreme Court's long-standing interpretation of this constitutional prohibition against lotteries, a game or scheme constitutes a "lottery" if the following three elements are present:
(1) Consideration is paid to play or participate;
(2) Playing or participating creates the chance to win a prize; and
 (3) The game is controlled entirely by chance, and winning is not influenced by the player's skill or judgment.
See Scott v. Dunaway, 228 Ark. 943, 311 S.W.2d 305 (1958); Shuffield v.Raney, 226 Ark. 3, 287 S.W.2d 588 (1956); Burks v. Harris, 91 Ark. 205,120 S.W. 979 (1909).
The question of whether any particular game possesses the above-listed elements of a "lottery" is entirely a question of fact. Although the Attorney General cannot make determinations of fact, you have provided enough facts for me to form an opinion as to whether the elements of a lottery are present in the scenario you have described. It is my opinion, based upon the factual information you have provided, that these elements are present in this scenario. More specifically, it is my opinion that in the scenario you have described, consideration is paid to play or participate in the bingo games at the club, because no one can play or participate unless he or she has either paid to be admitted to the club, or has been admitted by virtue of being with someone who paid to be admitted. Payment must be made by someone in order for any person to play. A previous Attorney General opined that the required consideration can be indirect. See Op. Att'y Gen. No. 93-364. In addition, playing or participating in the bingo games at the club you have described clearly creates the chance to win a prize. Finally, this office has in the past concluded that the game of bingo is controlled entirely by chance. See,e.g., Op. Att'y Gen. No. 93-437. Because all three elements of a lottery are present in the scenario you have described, I must conclude that the scenario violates the constitutional prohibition against lotteries.
It is also my opinion that the scenario violates the criminal statutory prohibitions against gambling. The Arkansas Supreme Court has specifically recognized that playing bingo for money constitutes the criminal offense of gambling, see Billy/Dot, Inc. v. Fields, 322 Ark. 272, 908 S.W.2d 335
(1995). In this regard, the court stated in Billy/Dot, supra: "[T]here is no question but that playing bingo for money constitutes gambling which is a criminal offense under our statutes." In addition, in Masterson v.State, 329 Ark. 443, 949 S.W.2d 63 (1997) (which you referenced in your question), the Arkansas Supreme Court specifically held that "bingo halls" constitute "gambling houses," the operation of which violates the criminal statutes. See A.C.A. § 5-66-103.
The particular issue that your question raises is whether a bingo operation in which the game is played for the chance to win a prize rather than cash violates the criminal statutes.[1] It is my opinion that such a bingo operation does violate the criminal anti-gambling statutes.
The criminal statutes do not define the term "gambling," nor has the Arkansas Supreme Court interpreted the term in a published opinion. Because the references in the anti-gambling statutes to the concept of gambling do not create any ambiguity in this regard, I find it appropriate to give the term "gambling" its common meaning in ordinary usage. Ghegan v. Weiss, 337 Ark. ___, ___ S.W.2d ___ (Case No. 98-1310, June 3, 1999). The common meaning of a term can be gleaned from a standard dictionary. The verb "to gamble" is defined in the Merriam-Webster as follows: "To play a game for money or other stakes." MERRIAM-WEBSTER DICTIONARY at 296. This interpretation of the concept of "gambling" is supported by specific language in the statute prohibiting the operation of illegal "gaming devices." That statute refers to "any game of chance, or at which any money or property may be won or lost[.]" A.C.A. § 5-66-104 (emphasis added). See also A.C.A. § 5-66-105 (referring to "money or other valuable thing"); Rankin v. Mills Novelty Co.,182 Ark. 561, 32 S.W.2d 161 (1930) (interpreting the predecessor statute to A.C.A. § 5-66-104).
Because the anti-gambling statutes contain nothing that would change this common-usage meaning of the concept of "gambling," I conclude that the legislature intended the concept of gambling, as referred to in the anti-gambling statutes, to entail the playing of a game for a chance to win either cash or a prize.
For this reason, I conclude that the scenario you have described does violate the criminal anti-gambling statutes, despite the fact that the bingo games that are conducted in that scenario pay off in prizes rather than cash.
Question 2 — If players could win cash prizes, how would the answer toQuestion 1 change?
It is my opinion that if players in the scenario you have described could win cash prizes, my answer to Question 1 would not change. See discussion in response to Question 1.
Question 3 — If the answer to Question 1 is that the game is illegal, isit conceivable that the non-members who are guests are actually playinglegally since they have not paid any money to play?
It is my opinion, as discussed in response to Question 1, that even the non-member guests are playing illegal bingo. The fact that particular guests do not pay for their own admission to the club is not relevant to the analysis of whether the bingo game is illegal. Rather, it is the fact that payment is required on some level, either directly or indirectly (along with the other requirements for illegality), that makes the game illegal. As previously noted, the fact that payment is indirect does not render the game acceptable. See Op. Att'y Gen. No. 93-364. The Chancery Court of Pulaski County so held in September, 1992. See State ex rel.Bryant v. Razorback Room Inc., et. al., No. 91-7596 (Pulaski County Chancery, 6th Div., September 29, 1992). The appeal of this case to the Arkansas Supreme Court was dropped. This case is thus controlling only in Pulaski County. The court stated the following in its conclusions of law:
 While the issue of consideration was disputed at trial, the evidence shows that the vast majority of bingo patrons in fact pay money in order to participate in the various games. The fact that these payments may be called donations is not, on this issue, significant. The defendants admit that if a significant portion of the bingo patrons chose to play for free, the bingo game would collapse. The game did not cease to be a lottery because some of the players were admitted to play for free, so long as others continued to pay for their chances. [Citations omitted.] The presence of non-paying participants did not change the status of those who paid. If it is a lottery as to those who pay, it is necessarily a lottery as to those who do not pay for their chances. [Emphasis original.]
Id. (Findings of Fact and Conclusions of Law at 10-11, 23-24 and 37-38).
This authority, although binding only in Pulaski County, bolsters my conclusion that in the situation you have described, even the non-member guests are playing illegal bingo.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] It should be noted that the "prizes versus cash" issue is not present in an analysis of whether a particular game constitutes a lottery. The winning of prizes rather than cash can (if the other two elements of a lottery are present) render a game an illegal lottery.