The Honorable Jimmy "Red" Milligan State Representative Post Office Box 68 Yellville, Arkansas 72687-0068
Dear Representative Milligan:
I am writing in response to your request for an opinion on the following question:
 May the Veterans of Foreign Wars as a 501(c)(19) organization accept donations as payment for bingo cards and issue a tax receipt to the donor? Additionally, may merchandise prizes be issued to the winners with the possibility of trading the prizes back to the Veterans of Foreign Wars for cash?
RESPONSE
Correspondence attached to your request indicates that these questions relate to a "proposal for a legally operated bingo game."
It is my opinion that the answer to both of your questions is "no." The only way to make charitable bingo of the kind you describe legal is to pass a constitutional amendment addressing the issue. Accord, Ops. Att'y Gen. 97-023; 93-305 and 93-005.
Although there is no controlling Arkansas Supreme Court case on "donation" bingo, at least one circuit court has ruled that the acceptance of "donations" for the purpose of playing bingo does not legalize the activity. On this basis and in light of available case law from other states, one of my predecessors concluded that the acceptance of "donations" does not eliminate the consideration necessary to constitute a lottery or gambling. Similarly, my predecessor and I have concluded that it does not matter from a legal standpoint if the prizes awarded take the form of cash or merchandise. There has not been any pertinent change in the applicable law since the issuance of these opinions and I have found no basis upon which to disagree with them. I should note, however, that criminal prosecution of bingo is left to the local prosecuting attorneys. Consultation with the local prosecuting attorney is therefore advisable.
Question 1 — May the Veterans of Foreign Wars as a 501 (c)(19)organization accept donations as payment for bingo cards and issue a taxreceipt to the donor?
In my opinion the answer to this question is "no." The Arkansas Supreme Court has specifically recognized that playing bingo for money constitutes the criminal offense of gambling. See Billy/Dot, Inc. v.Fields, 322 Ark. 272, 908 S.W.2d 335 (1995). In this regard, the court stated in Billy/Dot, supra: "[T]here is no question but that playing bingo for money constitutes gambling which is a criminal offense under our statutes." Id. at 277. Accord, Masterson v. State, 329 Ark. 443,949 S.W.2d 63 (1997). The playing of bingo also implicates the Arkansas constitutional proscription against "lotteries." Under the Arkansas Supreme Court's long-standing interpretation of this constitutional prohibition against lotteries, a game or scheme constitutes a "lottery" if the following three elements are present:
(1) Consideration is paid to play or participate;
(2) Playing or participating creates the chance to win a prize; and
 (3) The game is controlled entirely by chance, and winning is not influenced by the player's skill or judgment.
See Scott v. Dunaway, 228 Ark. 943, 311 S.W.2d 305 (1958); Shuffield v.Raney, 226 Ark. 3, 287 S.W.2d 588 (1956); Burks v. Harris, 91 Ark. 205,120 S.W. 979 (1909).
Your first question inquires as to whether the acceptance of "donations" rather than some type of straight admission charge would obviate the illegality of the game. One of my predecessors, in Op. Att'y Gen.93-305, cited some language from a decision of the Pulaski County Circuit Court on this issue as follows:
 All three elements of a lottery are present. The elements of prize and chance are not disputed. While the issue of consideration was disputed at trial, the evidence shows that the vast majority of bingo patrons in fact pay money in order to participate in the various games. The fact that these payments may be called donations is not, on this issue, significant. The defendants admit that if a significant portion of the bingo patrons chose to play for free, the bingo game would collapse. The game did not cease to be a lottery because some of the players were admitted to play for free, so long as others continued to pay for their chances. [Citations omitted.] The presence of non-paying participants did not change the status of those who paid. If it is a lottery as to those who pay, it is necessarily a lottery as to those who do not pay for their chances. [Emphasis original.]
State ex rel. Bryant v. Razorback Room Inc., et. al., No. 91-7596 (Pulaski County Chancery, 6th Div., September 29, 1992). (Findings of Fact and Conclusions of Law at 10-11, 23-24 and 37-38). See also, Op. Att'y Gen. 94-250 and 93-305.
As noted in Opinion 93-305, "[t]he appeal of this [Razorback Room] case to the Arkansas Supreme Court was . . . dropped. This case is thus controlling only in Pulaski County." An earlier opinion of one of my predecessors, however, also addresses "donation" bingo at length, concluding that "[a]lthough authority across the country is split on the issue, the current weight of authority appears to be that such `donation' type bingo operations are prohibited." Op. Att'y Gen. 91-162. I have found no more recent authority to contradict this conclusion. In fact, more recent determinations appear to be fully in accord with this view.See e.g., Texas Op. Att'y Gen. JC-0482, 2002 WL 463420 (2002) and Tenn. Op. Att'y Gen. 99-191, 1999 WL 1012946 (1999).
In addition, the fact that the sponsoring entity is a tax exempt charitable corporation does not change the result. In Op. Att'y Gen.2003-255, I stated that "there is no exemption from the constitutional prohibition against lotteries for charitable organizations." Id. citingState v. Bass, 224 Ark. 976, 277 S.W.2d 479 (1955) and Ops. Att'y Gen.97-023 and 94-250. Moreover, at least one state has invalidated a legislative scheme purporting to authorize charitable bingo on the premise that payments made to play were actually charitable donations to the sponsoring entities. See Secretary of State v. St. Augustine Church,766 S.W.2d 499 (Tenn. 1989) (stating that such a premise was an "ineffective means to circumvent the constitutional prohibition so long as the other elements of prize and chance are present.").
In my opinion, therefore, the acceptance of "donations" by a tax-exempt organization[1] does not eliminate the "consideration" required to constitute an unlawful gambling activity or a lottery.
Question 2 — Additionally, may merchandise prizes be issued to thewinners with the possibility of trading the prizes back to the Veteransof Foreign Wars for cash?
In my opinion the answer to this question is also "no." It is clear, in my opinion, with respect to the "prize" element listed above, that it makes no difference whether the prize awarded is in the form of merchandise or cash. Each can constitute a "prize" and therefore the third element of prohibited gambling or "lotteries." As I stated in Op. Att'y Gen. 2003-255 "in Masterson v. State, 329 Ark. 443, 949 S.W.2d 63
(1997), the Arkansas Supreme Court specifically held that "bingo halls" constitute "gambling houses," the operation of which violates the criminal statutes. See A.C.A. § 5-66-103. It does not matter whether the game is played for the chance to win cash, or other property or prizes."Id. at 2. I cited an earlier opinion to this same effect, Op. Att'y Gen.99-318, in which my predecessor stated the following:
 The particular issue that your question raises is whether a bingo operation in which the game is played for the chance to win a prize rather than cash violates the criminal statutes. [Footnote omitted.] It is my opinion that such a bingo operation does violate the criminal anti-gambling statutes.
 The criminal statutes do not define the term "gambling," nor has the Arkansas Supreme Court interpreted the term in a published opinion. . . . The common meaning of a term can be gleaned from a standard dictionary. The verb" to gamble" is defined in the Merriam-Webster as follows:" To play a game for money or other stakes." Merriam-Webster Dictionary at 296. This interpretation of the concept of "gambling" is supported by specific language in the statute prohibiting the operation of illegal "gaming devices." That statute refers to "any game of chance, or at which any money or property may be won or lost[.]" A.C.A. § 5-66-104 (emphasis added). See also A.C.A. § 5-66-105 (referring to "money or other valuable thing"); Rankin v. Mills Novelty Co., 182 Ark. 561, 32 S.W.2d 161 (1930) (interpreting the predecessor statute to A.C.A. § 5-66-104).
 Because the anti-gambling statutes contain nothing that would change this common-usage meaning of the concept of "gambling," I conclude that the legislature intended the concept of gambling, as referred to in the anti-gambling statutes, to entail the playing of a game for a chance to win either cash or a prize.
 For this reason, I conclude that the scenario you have described does violate the criminal anti-gambling statutes, despite the fact that the bingo games that are conducted in that scenario pay off in prizes rather than cash.
Id. at 2. (Emphasis in original).
In my opinion, therefore, the answer to your second question is "no." As stated previously, however, criminal prosecution of bingo is left to the local prosecuting attorneys. Consultation with the local prosecuting attorney is therefore advisable.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Correspondence attached with your request states that "[s]ponsoring bingo games as an income source to help Veterans, their families and the community, was included in the original charter signed by the U.S. Congress." My research reveals that the Veterans of Foreign Wars of the United States was granted a Congressional Charter on May 28, 1936. See36 U.S.C. §§ 230101 to 230113. It has been stated that: If Congress wishes to establish or charter a corporation, it does so by enacting a law, and it is this specific legislation that provides for the mission, authorities, and restrictions that will apply to the chartered corporation. . . . Because Congress never passed a general body of law applicable to the operation and powers of the for profit and nonprofit corporations it charters, Congress must include such provisions in each act granting a charter. Moe, Congressionally Chartered Corporate Organizations (Title 36Corporations), What They are and How Congress Treats Them, 46 JUL Fed. Law 35, Federal Lawyer, July 1999 at 36-37. I have found no reference in36 U.S.C. §§ 230101 to 230107 to the operation of bingo games.