Glen BASHAW, Harold D. Goffin, Sr.,
and Monticello Social Club, Inc. *v.*
STATE of Arkansas

04-897                                                    219 S.W.3d 146

Supreme Court of Arkansas
Opinion delivered December 1, 2005

274

*John F. Gibson, Jr.*, for appellant Harold Goffin, Sr.

*James A. Ross, Jr.*, for appellant Glen Bashaw.

*Mike Beebe*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

Donald L. Corbin, Justice. Appellants Glen Bashaw, Harold D. Goffin, Sr., and the Monticello Social Club, Inc., appeal the judgment and order of the Drew County Circuit Court finding that the Club was a public nuisance and enjoining its operation. The trial court further ordered the premises to be closed,

unless and until it is demonstrated that compliance with the injunction has been made. On appeal, Appellants argue that the trial court erred in holding that (1) the activities of the Club constituted a public nuisance; and (2) the trial court had jurisdiction for the issuance of an injunction abating the operation of the Club as a public nuisance. This case comes to us by certification from the court of appeals; thus, jurisdiction is proper under Ark. Sup. Ct. R. 1-2(b)(1) and (b)(4), as this case involves an issue of first impression and substantial public interest. We find no error and affirm.

Appellant Goffin is the operator of the Club, a non-profit corporation. The Club is licensed by the Arkansas Alcohol Beverage Control Board (ABC) as a private club. The Club is located at 111 North Conley Street, Monticello, Arkansas, on property owned and leased by Appellant Bashaw. The Club has been the site of numerous alcohol-related violations, as well as other criminal activity. Specifically, ABC Agent Roger Archie testified that Goffin and the Club had been cited for multiple violations, fined $500.00, suspended for two weeks, and placed on probation. These violations include the selling of unauthorized alcohol; selling alcohol in unauthorized containers; allowing minors on the premises without food service; gambling on the premises; and allowing an unauthorized weapon. Archie further testified that during the Club's suspension, the Club continued to violate the rules by dispensing alcohol, failing to cooperate with law enforcement, and failing to be a good neighbor by allowing altercations on the premises.

In addition to the ABC violations, on February 14, 2003, the Monticello Police Department executed a search warrant and raided the Club. The police found club patrons engaged in a dice game for money. The police seized $7,172.25 and arrested Goffin for operating a gambling house. Following Goffin's arrest, Bashaw terminated the Club's lease but he has allowed the Club to continue using the premises on a month-by-month basis.

Lastly, the Club has been the site of at least forty disturbances, ranging from vandalism to theft to homicides. Based upon the alcohol violations, the gambling, and the numerous public disturbances, the State filed a complaint for abatement of a nuisance. On February 19, 2004, the trial court issued an order finding that the operation of the Club constituted a public nuisance, enjoining Goffin from operating the Club, and finding that Bashaw has the obligation to not knowingly allow illegal activity to occur on his property. This appeal followed.

## I. Public Nuisance

▉▉   Appellants' first argument can be broken down into three sub-parts: (1) that the Club is not a public nuisance; (2) that Bashaw, an owner of the premises who is not a participant in the alleged misconduct, cannot be subject to an injunction; and (3) that the allowance of police investigation reports was hearsay. We initially note that the hearsay argument is not preserved for appeal, because the objection was withdrawn below. This court has held that when an objection is withdrawn, it is as though the objection was never made. *Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001). This court will not consider arguments raised for the first time on appeal. *Id.* Consequently, we will not address the hearsay argument.

Appellants' public nuisance argument is essentially a challenge to the sufficiency of the evidence to support the trial court's finding. Specifically, they challenge the trial court's finding that the operation of the Club was a common-law public nuisance.

▉   This court has repeatedly held that the operation of a gambling house is a public nuisance. *See Masterson v. State*, 329 Ark. 443, 949 S.W.2d 63 (1997); *Albright v. Karston*, 206 Ark. 307, 176 S.W.2d 421 (1943). Additionally, this court has found that the illegal sale of alcohol is a public nuisance. *Click v. State*, 206 Ark. 648, 176 S.W.2d 920 (1944).[1] There, this court found that even if an appellant is not convicted of the unlawful sale of alcohol, "it does not follow that his place of business did not become a nuisance for other unlawful practices and conduct, as disclosed by the evidence." *Id.* at 652, 176 S.W.2d at 922. Moreover, a public nuisance can exist where the place of business or activities that occur on the premises constitute a threat to public health and safety. *See Masterson*, 329 Ark. 443, 949 S.W.2d 63; *State v. Vaughan*, 81 Ark. 117, 98 S.W. 685 (1906). In reviewing the trial court's decision, we will not reverse its findings and conclusions unless they are clearly erroneous. *Masterson*, 329 Ark. 443, 949 S.W.2d 63. With this in mind, we now turn to the present case.

---

[1] Although the trial court based its decision on common-law public nuisance, it noted that the illegal sale of alcohol also statutorily constitutes a public nuisance. Ark. Code Ann. § 16-105-204 (1987). Within this chapter, the jurisdiction to abate this public nuisance is also given. Ark. Code Ann. § 16-105-205 (Supp. 2005).

In the present case, the trial court based its finding that the Club constituted a public nuisance upon a multitude of factors. Specifically, the trial court found that the Club was (1) unlawfully selling and dispensing alcoholic beverages; (2) permitting organized gambling on the premises; (3) selling alcohol in half-pints; (4) allowing minors into the Club; (5) selling alcohol for a flat fee; (6) allowing a shotgun to be accessible to patrons; and (7) advertising free alcohol. The court also noted that the Club and its immediate area have been the scene of numerous disturbances and breaches of the peace. Relying on this evidence, the court concluded that this unlawful activity in and around the Club constituted a threat to public health and safety and, thus, the Club was a public nuisance. This evidence is more than sufficient to support the trial court's finding that the Club was a public nuisance.

Appellants' remaining argument is that the trial court could not include Bashaw in its injunction because he was simply the owner of the premises and not a participant in the activities that created the public nuisance. While there is no Arkansas law directly on point, other jurisdictions have faced the issue of allowing an injunction in cases such as this.

■ In *Armory Park Neighborhood Ass'n v. Episcopal Community Servs.*, 148 Ariz. 1, 712 P.2d 914 (1985), the Arizona Supreme Court explained that "[u]nder general tort law, liability for nuisance may be imposed upon one who sets in motion the forces which eventually cause the tortious act; liability will arise for a public nuisance when 'one person's acts set in motion a force or chain of events resulting in the invasion.' " *Id.* at 7, 712 P.2d at 920 (quoting *Restatement (Second) of Torts* § 824 cmt. b). Furthermore, in *Packett v. Herbert, II*, 237 Va. 422, 377 S.E.2d 438 (1989), the Virginia Supreme Court explained that property owners "cannot avoid responsibility for the maintenance of a nuisance upon or near their property" because the activities complained of were not their own. *Id.* at 425, 377 S.E.2d at 441. These two cases indicate that an owner, even though not a party to the nuisance activities, can be enjoined by the court to abate a nuisance. *See also City of Rochester v. Premises Located at 10-12 South Washington Street*, 180 Misc.2d 17, 687 N.Y.S.2d 523 (1998) (finding that the fault of the owner is not an issue if a nuisance is found to exist).

■ These cases indicate that a property owner, such as Appellant Bashaw, can be enjoined from allowing the public nuisance activities to continue on the premises. Furthermore, the

evidence in the present case indicates that Bashaw was at least aware of some of the activities occurring at the Club. Specifically, he spoke to the Monticello Chief of Police and received information about complaints filed against the Club. He also was aware of the gambling charges filed against Goffin, and although he cancelled the lease, he allowed the Club to continue operating on the premises. Thus, it is clear that he was at least knowledgeable of the activities surrounding the Club. Accordingly, the trial court did not err in finding that the Club constituted a public nuisance and in enjoining Bashaw as the owner.

## II. Jurisdiction

For their second point of appeal, Appellants claim that the trial court erred when it held that it had jurisdiction to issue an injunction for the abatement of nuisance activities that also constitute a crime. This court has repeatedly held that equity has always had the authority to abate a public nuisance. *Masterson*, 329 Ark. 443, 949 S.W.2d 63; *State v. Karston*, 208 Ark. 703, 187 S.W.2d 327 (1945). When dealing with an activity that is criminal, as well as a nuisance, this court has found that there are narrow circumstances in which equity will enjoin the activity. *Masterson*, 329 Ark. 443, 949 S.W.2d 63; *Bates v. Bates*, 303 Ark. 89, 793 S.W.2d 788 (1990). Specifically, "equity may act to suppress a public nuisance, even though the maintenance of the nuisance is a crime, where there is alleged in addition to the public nuisance, some facts which show the remedy at law, by prosecution of the criminal, is inadequate and incomplete to effect relief." *Karston*, 208 Ark. at 712, 187 S.W.2d at 331. *See also Masterson*, 329 Ark. 443, 949 S.W.2d 63.

In this case, the trial court correctly found that the Club was a public nuisance. As such, it had jurisdiction to issue an injunction in order to abate the nuisance. While it is true that the illegal activities, *i.e.*, gambling and liquor law violations, could be remedied through the criminal courts, it is clear from the evidence that this would be an inadequate and incomplete remedy. Specifically, Goffin, as operator of the Club, does not appear to be deterred from continuing to engage in the illegal activities. As demonstrated by Agent Archie's testimony, Goffin continued to violate the Alcohol Control Act during the Club's suspension by dispensing alcohol. Additionally, shortly before trial, Archie wrote up Goffin and the Club for failure to cooperate with law enforce-

ment and failure to be a good neighbor by allowing altercations on the premises. This failure to comply with the conditions of the administrative sanctions against it demonstrates that the remedies in place do not deter Goffin and the Club from continuing to engage in these criminal activities. The trial court said it best: Goffin is contemptuous of criminal laws and therefore the remedy at law is ineffectual.

■ Finally, the State claims that the problems with the Club were broader in scope than the criminal prosecution for gambling activity, thus warranting the civil-nuisance-abatement action. The trial court clearly agreed with the State and found that the Club was a public nuisance on many levels, both criminal and as a threat to public health and safety. Consequently, the trial court properly found that it had jurisdiction to abate the nuisance, and the Club's argument is without merit.

Affirmed.